FRENCH and others *against* SHOTWELL.

A plea may be good in part, and bad in part: and where a plea is more extensive than the subject matter to which it relates, it will be allowed to stand as to so much of the bill to which it properly applies; and the defendant must answer as to the residue.

A decree, or judgment by consent, is binding and conclusive, unless procured by fraud.

Where a party to a judgment, entered up on a warrant of attorney, voluntarily waives his defence, or remedy, on the ground of fraud or usury, and releases the other party, a subsequent purchaser under him, with notice of the judgment, will not be allowed to impeach it, or to investigate the merits of the original transaction between the original parties.

As, where the party against whom a judgment had been entered, founded on an usurious consideration, filed a bill for relief against the judgment on that ground, but afterwards voluntarily consented to a decree dismissing the bill with costs: *Held,* that a subsequent purchaser of the land, on which the judgment was a lien, could not impeach it on the ground of usury or fraud.

THE bill was filed *January* 31st, 1820. *Dirck Tenbroeck* and his wife, by deed of the 20th of *December*, 1813, for the consideration of 5,100 dollars, conveyed to *James Kane*, in fee, all his interest in a tract of land called *Elizabethfield, at the Norman Kill,* in *Albany* county, containing 1044 and an half acres. On the 20th of *March*, 1813, *D. Tenbroeck* and his wife, for the consideration of 7,305 acres, conveyed to *James Kane*, in fee, 487 acres of land at *Elizabethfield*. *J. K.,* afterwards, sold and conveyed different parcels of the said land in fee, to the other plaintiffs, which were particularly stated in the bill. On the 10th of *May*, 1818, *James K.* gave a bond for 243,000 dollars to *Charles K., Dirck Van Schelluyne* and *Oliver K.* with a warrant of attorney, on which a judgment was entered up

*April* 6th,
*November* 12th
and *December*
27th.

on the same day, and a *fi. fa.* issued thereon the 11th of *April*, 1818, by which 152 acres, parcel of the land so conveyed, was sold by the sheriff to *E. Kane*, for 25 dollars. On the 26th of *February*, 1813, *Dirck Tenbroeck* gave a bond to the defendant for the penal sum of 20,000 dollars, conditioned for 10,000 dollars, with warrant of attorney, on which a judgment was entered up, the 27th of *February*, 1813. An execution on this judgment was issued, by virtue of which, lands of *D. T.* in *Saratoga* county, valued at 20,000 dollars, were sold by the sheriff, and purchased by the defendant for 500 dollars. That a *test. fi. fa.* for the residue of the debt, was issued to the sheriff of *Albany*, who levied on the lands, above mentioned, and conveyed, at *Norman's Kill.* The plaintiffs allege, that the bond and warrant of attorney, so given by *D. T.* to the defendant, were *usurious*, fraudulent and void. That the defendant proposed to sell to *D. T.* 250 acres of land in *Cosby's* manor, in *Oneida* county, to which he pretended to have title, and to advance to *D. T.* 750 dollars, if he would take a gig and harness at 500 dollars, and the 250 acres of land at 35 dollars per acre, and would secure the amount, being 8,750 dollars, by a judgment bond; that *D. T.*, being in necessitous circumstances, assented to the proposal ; and the bond and warrant of attorney were accordingly given. The plaintiffs averred that the agreement was by parol ; that the gig and harness were not worth 500 dollars ; and that the defendant never had any title to the land in *Cosby's manor.* That on the 24th of *July*, 1813, *D. T.* filed a bill against the defendant, *J. Kane* and three other persons, to set aside the bond and warrant of attorney, and judgment, and to restrain all proceedings thereon. That *D. T.*, by his urgent necessities, was induced to enter into a written agreement, on the 15th of *April*, 1814, which was set forth in the bill, by which, after various recitals, *D. T.*, for the consideration of 1,000 dollars paid to him, and of 5,000 dollars, which the defendant agreed to deduct,

from, and consider as satisfied on the last mentioned judgment, agreed to dismiss his bill, and pay the costs, and relinquish all objections to the judgment, and discharge the defendant from his contract to convey the 250 acres of land in *Cosby's* manor, and that the said judgment should remain in force for the balance, after deducting the 5000 dollars, but that no execution should issue thereon, for six months. That the defendant had assigned the judgments to *J. Kane.* The bill charged, that the judgment and execution were fraudulent. *Prayer*, for an injunction against a sale under the execution, and that satisfaction of the judgment be decreed to be entered, or the lands of the plaintiffs be exonerated therefrom, and for general relief.

The defendant put in a *plea* and *answer* : As to so much of the bill as seeks to impeach or set aside the judgment against *D. T.* for 20,000 dollars, and the execution thereon, and to exonerate the lands of the plaintiff therefrom, and to compel the defendant to set forth the consideration of the judgment, the defendant *pleaded in bar*, that on the 24th of *July.* 1813, *D. T.* filed his bill against the defendant and three others, to avoid the judgment, &c. That the defendants appeared and answered, gainsaying and avoiding the charges, &c. That on the 14th of *April*, 1814, *D. T.* agreed to dismiss the bill, &c. (setting forth the agreement, *in hæc verba.*) That, in pursuance of this agreement, a *decree* was made and entered, the 16th of *April*, 1814, dismissing the bill, as against the defendant and *W.* another of the defendants in that suit ; and confirming the judgments mentioned in the bill. That this decree remains in full force, and the defendant pleaded the agreement and decree in bar to so much of the bill, and of the relief sought thereby, as seeks to avoid, or draw in question, the judgment for 20,000 dollars, or the lien or operation thereof, or to compel the defendant to set forth the consideration, and to all the relief prayed by the bill.

1821.

FRENCH
v.
SHOTWELL.

In support of his plea, and for *answer* to the residue of the bill, the defendant stated, that after he had filed his answer to the bill of *D. T.*, he was solicited by *D. T.* to repurchase the 250 acres of land in *Cosby's* manor, which the defendant consented to do, and to allow him for the same 6,000 dollars; that is, 1,000 dollars in cash, and 5,000 dollars on the judgment, and that the defendant, accordingly, paid *D. T.* 1,000 dollars, and gave him credit on the judgment for 5,000 dollars. The defendant denied, that the *agreement or the decree*, above mentioned, were fraudulent or collusive, or that any undue advantage was taken of *D. T.*, to induce him to enter into the agreement; but he averred that the same was fairly made, &c. He admitted the issuing of the execution to *Saratoga*, and the sale of lands of *D. T.* as stated in the bill; but that *James K.*, or some person in his name, had, afterwards, issued an execution on an older judgment, under which the lands in *Saratoga* had been seized and sold, whereby the defendant lost his whole title to those lands. He admits that he caused an execution to be issued for the balance on the judgment, with directions, as stated in the bill, which he thinks was incorrect as to the amount due, and was willing that it should be corrected, and reduced to 5,806 dollars and 4 cents, after deducting from the interest the 500 dollars arising from the sale of the lands in *Saratoga*. He insisted, that this balance was justly due, and that the lien of his judgment was prior to any of the conveyances by *D. T.*

*April* 6th. The plea was brought to argument this day.

*Henry*, for the plaintiffs, contended, 1. That part of the defence made by the plea was bad, and the whole ought, therefore, to be overruled.

2. That the plea was to the whole bill, and the answer to parts of the bill overrules the plea.

3. That the matter of the plea was insufficient, inasmuch as the suit and decree therein stated, were instituted and made after the acquisition of the title under which the plaintiffs claim ; as the plaintiffs were not parties to that suit, their right to avoid the judgment confessed by *D. Tenbroeck,* is perfect, and not impaired or affected by that suit or decree. (*Cooper's Equity Plead.* 229, 230. 1 *Anst.* 59. 2 *Bro. C. C.* 641. 645, 646. 648, 649.)

*H. Bleecker,* contra, insisted, 1. That the *decree* set forth in the plea, precluded the plaintiffs from inquiring into the consideration of the judgment in favour of the defendant against *D. T.*

2. That the plaintiffs purchased after the judgment was docketted, and after the bill filed by *D. T.*, and are bound by the judgment.

3. That the defendant in that judgment, could not now set up, nor could the plaintiffs, at any time, avail themselves of, the *usurious* consideration, if any such existed. (*Ambler,* 229. *Coop. Equ. Pl.* 99. 1 *Ch. Cas.* 231. *Comyn's Dig. Chancery, Y.* 2. *Phillips' Ev.* 227. 262. 2 *Madd. Ch.* 248. 2 *P. Wm.* 74. *Cowp.* 285. *Sugden L. of V.* 432. 484. 1 *Madd. Ch.* 217. 221. 1 *Fonbl. Equ.* 217. *Viner. tit. Usury,* 308. *pl.* 7. *Str.* 1043. 3 *Johns. Ch. Rep.* 395. *Ambler,* 293.)

*July* 12th. By a decretal order of this day, the plaintiffs have leave, within thirty days after notice of the order, to reply and take issue on the plea, on payment of the costs of the hearing and of the order, or that the bill of the plaintiffs be dismissed, with costs, &c.

The plaintiffs afterwards petitioned for a rehearing against the order, which was granted.

1821.

FRENCH
v.
SHOTWELL.

*November* 12th. The cause was this day reheard, and was argued by

*Henry,* for the plaintiff.

*Slosson,* contra.

*December* 27th. The cause stood over for consideration until this day.

THE CHANCELLOR. The bill charges the judgment against *Tenbroeck,* in favour of the defendant, to have been usurious, fraudulent and void, being founded not only in usury, but in manifest oppression, corruption, and extortion. This was the chief *gravamen* in the bill; and all the other charges, except one, seem to have been the mere result and consequence of this original injury. Thus it is charged, that *Tenbroeck* filed his bill in this Court to be relieved against the judgment, on account of the corrupt and fraudulent nature of the same, but that the defendant, taking advantage of his pecuniary necessities, induced *Tenbroeck* to dismiss his bill, and recognize the validity of the judgment, after a certain reduction in the amount. It is also charged, that the defendant fraudulently issued his execution to the sheriff of *Saratoga.* But there could have been no complaint of the settlement of the suit between *Tenbroeck* and the defendant, nor of the mere fact of issuing an execution to the sheriff of *Saratoga,* if the original judgment had been deemed just and sound. That execution could not have been charged as having issued fraudulently on any other ground. An execution may well issue, and yet the direction to levy more than is due be an abuse. The plaintiffs contend, that the defendant has attempted to cover, by the judgment, one thousand dollars subsequently advanced. If this were so, (and which I do not now stay to examine,) yet the execution could not, on

that account, have been deemed a fraudulent one, and it would have been good for what was really due under the judgment. To all this part of the bill, which seeks to impeach, or set aside, the judgment and the execution thereon, the defendant pleads in bar the settlement of the suit in Chancery, and a decree entered by consent between *Tenbroeck*, and the defendant, on the 16th of *April*, 1814, dismissing the bill, and recognizing the validity of the judgment. The answer, accompanying the plea, and intended as auxiliary to it, denies that the agreement to discontinue the suit, and the decree entered in pursuance of that agreement, were collusive or fraudulent, and avers the same to have been fairly procured. The plea is set up in bar " to so much, and such part of the bill, and of the relief sought thereby, as seeks to avoid or draw in question the judgment, or to compel the defendant to discover and set forth the original terms and consideration thereof, and to all the relief prayed for in and by the bill, and that he ought not to be compelled to make any other or further answer to so much and such part of the bill, as is herein and hereby pleaded unto as aforesaid."

This plea was evidently intended to be a bar to that part only of the bill, which sought to impeach the judgment. It is to *so much of the bill*, &c. and that the defendant be not compelled to make any other answer to *so much, and such part of the bill, &c.* But the plea did conclude *to all the relief prayed for, in and by the bill.* The specific prayer in the bill, was not only for an injunction, but that satisfaction might be decreed to be entered, or the lands of the plaintiffs exonerated; and we perceive, that there was another distinct charge in the bill, not immediately connected with the infirmity of the judgment, and to which an intimation, which I have already made, had reference. This charge is, that the sale in *Saratoga* county was fraudulently conducted, and competition prevented, by which means the defendant was enabled to buy in a large estate of *Tenbroeck*, for a

1821.

FRENCH
v.
SHOTWELL.

A plea may be good in part, and bad in part: and where a plea is more extensive than the subject matter to which it relates, it will be allowed to stand, as to so much of the bill to which it properly applies, and as to the residue, the defendant must answer.

consideration almost nominal. Under certain circumstances, such a fact may operate as a satisfaction of the judgment and execution, and the charge of that fraud was not covered by the plea, and yet that charge might have been one ground of the prayer for the relief. The difficulty is, that the plea, after concluding properly to *so much of the bill, &c.*, goes on, and concludes *to all the relief prayed for.* In this respect the plea was more extensive than the subject matter, to which it related, but the remedy for such a defect is mild and liberal. It is only to order the plea to stand for so much of the bill as it properly covers, and no more, and to require the defendant to answer to the residue of the bill. Thus, in *Dormer* v. *Fortescue,* (2 *Atk.* 282.) Lord *Hardwicke* observed, that where there is a plea which covers too much, the Court will allow it to stand for part, and overrule it for part. It is a well settled rule in this Court, that a plea may be good in part, and bad in part, and that the Court will allow it to stand as to so much of the bill to which it properly applies. The objection to the plea in this case, that it covers too much, does not lie to the body of the plea, but to the conclusion ; and even in that respect, the conclusion is inconsistent with itself, for while one part of it goes to the whole relief, the other parts of it confine the plea to the subject matter of the judgment. It can scarcely be considered as any thing more than informality, or a mistake of the pleader ; but the defect can easily be cured. We have an ancient case, very much in point, in *Allison* v. *Sharpley*, (*Hard.* 216.) in which a too extended conclusion to a plea in bar, being to the whole bill, when the matter of the plea was special, was corrected by the order, that as to what was not contained in the plea, the defendant ought to answer.

So far, the decretal order in this cause, against which a remedy is sought by the rehearing, was manifestly erroneous, and ought to be corrected. The defendant must answer to that part of the bill, not covered by the plea, viz.

the fraud in the sale in *Saratoga* county. Until the facts respecting that sale are fully disclosed and discussed, it will be impossible to say how far the sale may have operated towards satisfaction of the judgment.

Another charge, which may be deduced from the bill, as being altogether distinct from the averments, impeaching the judgment, is that the defendant gives credit on the judgment only, for 5,000 dollars, in consequence of the agreement, stated in the bill, and admitted in the plea, whereas he ought to have given credit for 6,000 dollars, which was the price agreed on for the release of the lot in *Cosby's* manor. If that lot was part of the consideration of the judgment, and if that lot, which had never in fact been conveyed to *Tenbroeck,* was by a subsequent agreement withdrawn from the consideration of the judgment at a valuation of 6,000 dollars, the conclusion would perhaps be, that the judgment ought to be reduced *pro tanto.* The question, arising on this point, does not touch the validity of the plea, which only goes to bar the plaintiffs from avoiding, or drawing in question, the consideration or validity of the judgment, and the lien created thereby; but it serves further to show, that the decretal order, complained of, was founded in mistake, when it considered the plea, if not put in issue, as a bar to the entire relief. It is not necessary at present to express any opinion, whether the claim, on the part of the plaintiffs, for a further reduction of 1,000 dollars, beyond the 5,000 dollars admitted by the defendant under the agreement set forth in the bill, can be sustained. It is sufficient to say, that here appears to be a fit subject for inquiry and discussion, and which is not strictly embraced by the plea.

Having thus disposed of these points, I proceeded to consider the great and main question in the case, whether the plea be, or be not, a good and valid plea to all that part of the bill, which seeks to question the judgment by impeaching its consideration.

A decree by consent is binding and conclusive, unless procured by fraud.

When this cause was before me, upon the first hearing, I observed, that " the *gravamen* in the bill was usury, extortion and fraud in procuring of the judgment, and corruption and fraud in procuring the decree set up as a defence. *Tenbroeck*, the original judgment debtor, exhibited his bill in this Court to be relieved from the judgment on the same grounds, and the suit was afterwards dismissed by a decree entered, by consent, upon an adjustment and settlement between *Tenbroeck* and the defendant. No doubt *Tenbroeck* might have been relieved by original bill from that decree, if procured by fraud, but if the decree be pleaded .to such an original bill, accompanied by an answer specially denying the fraud, the plea is valid. Thus, in *Loyd* v. *Mensell*, (2 *P. Wm.* 73.) an original bill was filed to redeem a mortgage, and it stated, that the defendant had, by a .decree, in a former bill, brought by him against he mortgagor, (the father of the then plaintiffs,) to foreclose the equity of redemption, obtained a decree of foreclosure by fraud. The defendant plead the former decree in bar, and gave no answer to the fraud, and *for that reason* the plea was overruled. And in *Wishall* v. *Short*, (7 *Viner,* tit. *Decree*, p. 398. *pl.* 15. 2 *Eq. Cas. Abr.* 177, *H.* 1. *S. C.*) a like plea to a like bill, accompanied with an answer, denying the fraud, was held good by Lord *Ch. Harcourt*, and the bill was dismissed with costs. The same rule was admitted by Lord *Hardwicke* in *Bradish* v. *Gee*, (*Amb.* 229.) and there can be no doubt of the settled doctrine, that, " a decree by consent is binding, unless procured by fraud ; and in such case, the party may be relieved against it, by original bill. But if the fraud be denied in the answer accompanying the plea, the decree, which is impeached, may be plead to such a bill."

These observations and authorities would appear to be unanswerable, if *Tenbroeck* himself was now the plaintiff, seeking to impeach the judgment he had confessed ; and I

cannot see why they are not equally só, when a purchaser under *Tenbroeck*, subsequent to the judgment, seeks the same relief. Judgments and decrees bind privies in estate ; and *J. Kane*, the purchaser under *Tenbroeck*, subsequent to the judgment, was a purchaser with notice of the judgment. It is a settled principle, that none but parties or privies can have error upon a judgment, and the doctrine in the old cases is very strong and very applicable to this point. If a tenant *alien even pending a real action*, and then judgment pass against him, the alienee cannot have error for want of privity, and if the alienor bring error and be restored, the feoffee shall enter upon him. (1 *Rol. Abr.* 748. *pl.* 20. 23. and *Viner,* tit. *Error, p.* 495. *pl.* 20. 23. and the cases &c. cited in the margin.) The docketing of the judgment and the filing of the roll, are notice of the lien to a subsequent purchaser. *Tenbroeck,* the original party to the judgment, might have impeached it for fraud ; but it seems difficult to admit, that even he, the party injured, could impeach a judgment voluntarily confessed, on the ground of usury. He who confesses a judgment, or suffers it to pass by default, is concluded from defence, according to the general language of the cases. (*Middleton* v. *Hill,* Cro. *Eliz.* 588. *Bush* v. *Ever,* Str. 1043. *Cases temp. Hard.* 220. *S. C. Matthews* v. *Lewis,* 1 *Anst.* 7. Lord Cb. in 14 *Vesey,* 31. Lord *Thurlow,* in *Scott* v. *Nesbit,* 2 *Bro.* 641.) And if the party himself, who is the victim of fraud or usury, chooses to waive his remedy and release the party, it does not belong to a subsequent purchaser under him, to recall and assume the remedy for him. If a judgment was fraudulent by collusion between the parties to it, on purpose to defraud a subsequent purchaser, the case would present a very distinct question. But if the judgment was fraudulent only as between the parties, it is for the injured party alone to apply the remedy. If he chooses to waive it and discharge the party, it cannot consist in justice or sound policy, that a subsequent voluntary

If the party himself, voluntarily waives the defence to a judgment, on the ground of fraud or usury, and release the other party ; a subsequent purchaser under him with notice cannot impeach the judgment, or assume the remedy for him, which he has freely relinquished: more especially,

1821.

FRENCH
v.
SHOTWELL.

*where the party having once filed a bill to set aside the judgment, on the ground of usury, abandons his defence, and consents to a decree against him.*

purchaser, knowing of that judgment, should be competent to investigate the merits of the original transaction as between the original parties. *Quisque potest renunciare jure pro se introducto.* Feuds and litigation would be interminable, if any distinct purchaser of distinct parcels of land, affected by a judgment, existing, and known when they became interested, could overhale the judgment upon an allegation of usury, extortion or fraud, practised upon their principal, the vendor, when he himself chooses to acquiesce in the alleged injury, or has expressly waived all complaint. It is stated to have been a principle of the common law, that a fraud could only be avoided by him, who had a prior interest in the estate affected by the fraud, and not by him who subsequently to the fraud, acquired an interest in the estate. (*Upton* v. *Basset, Cro. Eliz.* 445. and recognized in 3 *Co.* 83. *a.*)

If *Kane,* from whom all the plaintiffs derived title, had not parted with his estate, and had not filed this bill, could he have been admitted to investigate the consideration of the judgment? We have seen that *Tenbroeck* could not, and that the plea would most clearly have been a bar to him. *Kane* was no party to the decree, and that alone would not preclude him, as it would *Tenbroeck,* provided he was previously entitled to open the judgment or impeach it. But being a purchaser from *Tenbroeck,* subsequent to the entry of the judgment, and with knowledge of the judgment, he would be precluded without the decree, and the decree and circumstances attending it may be considered as auxiliary, and as giving special force to the reason and policy of the rule, by which he, and those holding under him, would have been precluded without the decree. *Kane* was a party to *Tenbroeck's* suit, and it cannot but be intended, that he knew of the charge contained in his bill; and yet he suffers, unconcernedly, *Tenbroeck* and the defendant to carry on, and terminate, their controversy, according to their own discretion and judgment, without in-

terposition or complaint. It was terminated in good faith.
The decree was obtained fairly, without any imposition or
fraud. This is the necessary conclusion, for it is so aver-
red in the answer accompanying the plea, and the cause is
brought to a hearing, touching the sufficiency of the plea,
without traversing it, and its averments are thereby admit-
ted to be true in point of fact. *Kane* suffers this charge
of usury and fraud in the judgment to be discussed and
settled by the parties to the judgment, and goes on and
sells part of the land bound by the judgment, pending the
suit of *Tenbroeck*, and parcels of it, subsequent to the de-
cree; and can it be possible, that he, a stranger to the judg-
ment, and a voluntary purchaser under it, and with know-
ledge of the subsequent suit, could now be permitted to com-
pel the defendant to discuss the merits of that judgment
over again with him; to have his rights and interest twice
tried, and twice jeopardized, on a charge of fraud? It
would be an anomaly in our jurisprudence, for such a sub-
sequent purchaser to be enabled to revive the litigation.
He is precluded, as being a volunteer under a judgment be-
tween other persons. He is emphatically precluded from
coming here, after those persons have litigated the va-
lidity of the judgment, and consented, upon fair terms, to a
decree in this Court, waiving all objections to the judg-
ment, and recognizing its obligation. The judgment pre-
cludes, on general principles; for the purchaser voluntarily
comes in, under the judgment *pro bono et malo*, and except
in the special case, in which the judgment was confessed
collusively, and by a corrupt agreement to defraud some
subsequent purchaser, (a case hardly to be supposed,) he
must take the lien as he finds it, and has no business to
interfere with the contracts of other people. The decree
affirming the judgment, precludes him also, because it gives
the judgment the additional force of a *res judicata* between
the parties to the judgment, after they had raised questions

on the judgment themselves. I cannot entertain a doubt that the present attempt, if successful, would be unprecedented, and contrary to the most obvious principles of public policy. It would contravene that sound maxim of the common law, that *expedit reipublicæ ut sit finis litium.*

Let us trace this subject a little farther into its consequences.

If *James Kane,* the purchaser of only a small part of the lands bound by the lien of the judgment, would have had a right to open the merits of the judgment, another purchaser of another parcel of the lands would have had the same right, not only after the original debtor, *Tenbroeck,* had waived or released his right, but even after *Kane* had also filed his bill upon the same ground, and then had settled the controversy upon a similar decree by consent. If a decree by consent, between the original parties, could not bind these privies in estate, would a decree on the merits, after a solemn discussion and consideration by the Court, bind them ? There is no difference between decrees entered by consent, and decrees after argument. If fairly entered, they are equally valid and operative, so long as they remain in force. And upon the doctrine of this bill, the defendant might be vexed, again and again, with the same charges, brought forward by different purchasers, under *Tenbroeck.* This would be an oppression, contrary to the genius of our law ; and I see no way to avoid this result, but by adhering to the plain rule, that it belongs to the party to the judgment, and to him only, or his lawful representatives, to question the consideration of it.

In the present case, we have not *Kane,* the first purchaser under the judgment, but we have purchasers under him, seeking to open the judgment. The plaintiffs stand two degrees removed from *Tenbroeck,* the party injured. Here are purchasers of a purchaser undertaking to impeach the original judgment ; and they all became such after the com-

mencement of the suit brought by *Ten Broeck*, (and all but one of them after the decree) in which *Ten Broeck* voluntarily waives or settles the cause of action with the defendant. If these plaintiff- can be permitted to impeach that judgment, causes of action might be said to become negotiable, and to be capable of subdivision to any degree, and susceptible of re-litigation to any extent. I cannot imagine a case in which the pretension would appear to be more inadmissible.

I shall accordingly declare the plea to be good, and direct it to stand good, as to all that part of the bill which goes to impeach the consideration of the judgment for usury, extortion, fraud or any other cause alleged in the bill, and that the defendant, within six weeks after notice to his solicitor of this order, answer such parts of the bill not covered by the plea and its accompanying answer, as relate to the charge of fraud in the sale in *Saratoga* county, or to any payments which may have been made upon the said judgment, to the end, that the balance due thereon, (if any) may be ascertained. And I shall further order, that the question of costs be reserved, and that the deposit of 50 dollars, with the register in pursuance of the order for a rehearing, be returned to the solicitor for the plaintiffs.

Decree accordingly.