Carr, J.
The depositions in this case, though they raise a suspicion as to the consideration of the bond, are by no means such proof as a court can rest a decree on. The chancellor considered the answers of James and Robert Penn as evidence of the usury. But those answers are nowise responsive to the bill: the bill did not call on those *68 defendants to answer to the charge of usury: the bill said • not a word about the usury. The answers, on that point, contain substantive, affirmative allegations; and the defendants were bound to make out their case by proof. The chancellor’s doctrine is not only novel, but exceedingly mischievous. When a plaintiff in chancery attempts to enforce an usurious security, and the fact of usury is made out in the defence, we know that such security is declared void by the court, and ordered to be delivered up and cancelled. This, however, being a pretty severe penalty, is not inflicted without strong and clear proof: but if this new doctrine were to prevail, the very reverse would be the ease. Indeed, a mortgage, now considered among the best securities, would rather tend to endanger than secure a debt; for upon a bill being filed to foreclose, the defendant would only have to answer that the debt was usurious, and unless the creditor happened to be prepared to disprove it, he must lose the whole, however honest and fair. This would hold out a dangerous temptation to perjury, and would put into the hands of defendants a power not to be borne. The allegation of usury in the answers are, therefore, to be thrown out of the case; and I repeat, that there is little else but hearsay and conjecture. But suppose there was usury, can Clark make that defence ? I strongly incline to think not. He bought this property when it was bound for this debt; he bought it, binding himself to pay this very debt as a part of the price. The Penns insist on this payment. Can he gainsay it? Quisquís potest renunciare jure pro se introducto. If the injured party chooses to waive the matter, what right has a subsequent voluntary purchaser, with full notice of the lien, to take advantage of it ? I can perceive neither the law nor the morality of such an attempt; and I refer to the case of French v. Shotwell, 5 Johns. Ch. Rep. 555. as strong to shew that such an effort is not to be tolerated.
Cabell, J concurred.
*69 Tucker, P.
If it were competent, in this case, for the appellee Clark to set up the defence of usury at all, I shoidd be of opinion, that it was not adequately sustained. Where tliat defence goes, not merely to absolve the debtor from the. usurious gain, but to vacate the contract, and to annihilate the debt,—to take from the usurer his just principal and interest, and. put it in the coffers of the debtor to whom it does not fairly belong,—it is right, upon every principle of good sense and of law, that the fact should be clearly proved. At law, this is certainly the case. If usury be pleaded to a bond, and established, the bond is vacated, and the usurer loses his debt. Therefore, the usury is required to be set forth precisely in the plea, and it must be proved as set forth. The effect of this is, that if the party fails in his proof, or cannot establish the usury without resort to a court of chancery, he will be compelled, in receiving the aid of that tribunal, to pay up the principal which is justly due; and this is precisely the result that justice requires; for, while we look with aversion upon the usurer who demands twenty per cent, of a needy borrower, the moral sense revolts not less at the needy borrower who will pocket eighty per cent. of the usurer’s money.
Although I can cite no case, to shew that a plea of usury by a defendant in equity, must be as distinctly set forth, and as clearly sustained, as in an action at law, I incline to think that such is clearly the rule: nor is it injurious to the defendant ; for if he fails in establishing the usury, he may still by an appeal to the conscience of the usurer by a cross bill, relieve himself from the usurious premium. If this be so, there can be no reasonable doubt, that there is not such reasonable proof in this case, as to sustain the allegation of usury, and to destroy the plaintiff’s demand even for his principal.
But I am very clearly of opinion, that the plea of usury could not be resorted to by the defendant Clark.' It appears, that to secure Robert Penn, the indorser of the bond, James Penn gave him a bond specially providing for the payment of this bond. James afterwards sold the whole of *70 the mortgaged property to Clark, with a view to discharge bis debts, and this among others; and, afterwards, Robert gave up the mortgage to Clark to be cancelled, upon a like distinct engagement that Clark would pay the debts secured ky ib and Ibis among the others. The purchase money of the property, then, was (if I may so speak) the payment of these debts. That was the consideration. Clark has got the property; shall he not pay the consideration? If he gets rid of this debt, by this plea of usury, then he gets the property for £ 500. less than he agreed to give. This can never be. He has engaged to pay the debt, and must pay it. If the party who is the victim of fraud or usury, waives his remedy, and releases his adversary, it does not belong to a subsequent purchaser under him to recall and resume the remedy for him. If, then, in this case, James Penn had given Crenshaw a deed of trust, and had then sold to Clark, Clark could not set up the usury, provided James Penn had waived it. The case is stronger here; for the defence is not only waived, but the purchase is made with the express engagement on the part of the purchaser, to pay the debt: and moreover, the Penns in their answer, are found earnestly insisting that the debt shall be paid by Clark. Well, indeed, may Janies Penn do so, for he is now irrevocably fixed for it: he pleaded usury at law, and it was found against him; judgment has been rendered upon the verdict; and if he were now to seek redress in equity, he could only do so under the provisions of the statute of usury, by appealing to Crenshaw's conscience; in which case, he would have to pay the principal sum, at least. Indeed, as Crenshaw is dead, even this relief is, probably, taken from him. He is, therefore, exposed to the judgment of the administrator, while the appellee Clark holds his property, out of which that debt was to have been paid. It is impossible that this can be right.
I am of opinion, that there is error in dismissing the bill, and that the decree should be reversed, and the cause sent back to be further proceeded in. It is not in such a state as to enable us to decree finally; 1. because the property to be *71 charged does not distinctly appear; and 2. because, it having been agreed by Clark to pay only to the extent of 13,249 dollars, if that sum be insufficient to pay all, and if he is chargeable no farther, this court is not in possession of the materials upon which to decide whether there ought to be preferences, or an apportionment, among the creditors.
Decree reversed, and cause remanded to the court of chancery for further proceedings.