No. 9641.

## HOGG *v.* LINK.

QUIETING TITLE.—*Pleading.*—*Defences.*—*Evidence.*—In an action to quiet title to real estate, any matter of defence, either legal or equitable, may be given in evidence under the general denial.

JUDGMENT.—*Procurement of by Fraud.*—*Equitable Defence.*—Fraud in obtaining a judgment is an equitable defence to such judgment, under the code.

SAME.—*How Attacked for Fraud.*—Fraud in the procurement of a judgment constitutes ground for a direct attack upon the judgment by a party thereto, by an application corresponding to an original bill in equity.

SAME.—*When Vendee May Not Attack Judgment Procured by Fraud Against Vendor.*—Where a purchaser of real estate takes a conveyance with covenants of warranty, with legal notice of a judgment lien upon the land, though he pay full value, he must rely upon his grantor's covenants and the equities arising out of the relation thus voluntarily assumed, without the right to impeach the judgment for fraud practiced against the judgment defendant alone in the procurement of the judgment.

SAME.—*Case Stated.*—H., by a fraud practiced upon R., obtained a judgment against the latter, which became a lien upon the real estate of R., which R. afterwards sold and conveyed to L. by deed, with full covenants. Subsequently, H. became the purchaser of the land under execution issued upon his fraudulent judgment, and took a marshal's deed upon his purchase.

*Held,* that though R. could have protected his title by attacking the judgment collaterally for the fraud, yet L., his grantee, could not.

From the LaPorte Circuit Court.

*L. A. Cole* and *C. H. Truesdale*, for appellant.

*M. H. Weir*, *W. B. Biddle*, *A. C. Harris* and *W. H. Calkins*, for appellee.

BLACK, C.—The appellee brought suit against the appellant and three others, who have declined to join in this appeal.

The complaint alleged, that appellee was the owner in fee simple of certain land in LaPorte county, and that the defendants, and each of them, were asserting some adverse title or interest therein without foundation in law or equity, and thereby there was a cloud upon appellee's title. Prayer that appellee's title be quieted in him, and that the defendants be restrained from asserting title.

Appellant answered by general denial, and filed a cross-complaint, in which he asserted his ownership of the land in fee simple, and sought to quiet his title and to enjoin his co-defendants and the appellee from asserting title.

No answer to the cross complaint appears in the record.

Two of the other defendants filed disclaimers; the third does not appear to have been notified, and he did not appear.

The cause was submitted to the court for trial, and the court, upon request, stated the facts in writing, with conclusions of law thereon, as follows:

" This cause having been submitted to the court for trial, at the request of the plaintiff, the court states in writing the facts found, as follows:

" 1. The court finds, upon the admission of the defendant, made upon the trial, that upon the 21st day of March, 1870, one Benjamin Ruffner became seized by perfect title in fee simple of all the lands described in the complaint.

" 2. That on the 9th day of May, 1870, the said Benjamin Ruffner conveyed all the lands described in the complaint, by warranty deed, in fee simple, to the plaintiff, which deed was duly acknowledged and recorded in the recorder's office of this county on the 7th day of July, 1870.

" 3. That on the 17th day of December, 1866, the defend-

ant Hogg recovered a judgment in the circuit court of the United States for the District of Indiana, against the said Benjamin Ruffner, for the sum of $28,992.89, the same being the balance of a certain debt secured by mortgage, over and above the amount realized from the sale of the mortgaged premises; upon which judgment an execution was issued February 26th, 1872, levied upon the land in controversy on the 16th day of March, 1872, and, on the 19th day of April, 1872, after compliance with all the requirements of the law in advertising the same, said land was sold by the marshal; that the defendant became the purchaser at said sale of all the said lands, and the said execution was duly returned on the 27th day of July, 1872.

" 4. That on the 25th day of January, 1876, the defendant received a deed of conveyance from the marshal upon said sale, conveying to him all the lands mentioned in the complaint, which deed was duly recorded by the recorder of this county, on the 2d day of February, 1876; and the defendant claims title to said lands under said marshal's deed.

" 5. That prior to the rendition of said judgment in favor of the defendant against the said Benjamin Ruffner, to wit, on the 18th day of May, 1865, the defendant entered into an agreement with the said Ruffner, whereby, upon a valid and valuable consideration, the entire indebtedness upon which said judgment was rendered was fully satisfied and discharged, and it was then and there agreed between the defendant and said Ruffner that in the foreclosure proceedings then pending there should be no judgment rendered against said Ruffner for any balance of the debt secured by said mortgage so being foreclosed, over and above the amounts realized from the sale of the mortgaged premises; that after making said agreement the defendant, in the absence of said Ruffner and his attorneys, and without their knowledge or consent, caused said judgment to be entered against said Ruffner; and that said judgment was procured by the defendant through fraud.

"Upon the foregoing facts the court states the following con-clusions of law:

"1. That the said judgment rendered in the circuit court of the United States, in favor of the defendant, against the said Benjamin Ruffner, was and is void, on account of the fraud practiced by the defendant in procuring it; and that said judgment does not sustain the sale and deed of convey-ance made by the marshal, under which the defendant claims title to the land in controversy.

"2. The plaintiff is the owner in fee simple of the lands described in his complaint, and is entitled to have his title thereto quieted in him as against the defendant."

Appellant excepted to the conclusions of law, and judgment was rendered as prayed in the complaint.

Appellant moved for a new trial. The motion was over-ruled. The assignment of errors questions the correctness of the conclusions of law stated in the special finding, and the correctness of the action of the court in overruling the motion for a new trial.

In an action to quiet title to real estate, any matter of de-fence, either legal or equitable, may be given in evidence under the general denial. Sections 596, 611, 612, Code of 1852; Sections 1055, 1070, 1071, R. S. 1881; *Graham* v. *Graham*, 55 Ind. 23.

No question is made as to the want of an issue on the cross complaint. The parties, without objection, tried the cause as if the cross complaint had been answered by denial, and the case is to be treated here as if there had been a denial of the cross complaint.

The question which must control the decision of the case is whether the appellee could properly be permitted to attack appellant's judgment against Ruffner, by proving that it was procured by fraud.

It is a well settled and familiar doctrine, that in courts of equity a judgment may be enjoined for fraud in obtaining it, at the suit of the injured party.

A judgment can not be thus attacked for fraud, the questions concerning which were litigated in such judgment; but fraud used in obtaining a judgment is regarded as perpetrated upon the court, as well as upon the injured party, and the judgment so obtained may be attacked therefor. Pomeroy Eq. Jur., section 919.

That the circumstances under which the judgment against Ruffner was obtained, as shown by the special finding, constituted such a fraud as would authorize the interposition of a court of equity upon a direct application by the judgment defendant for that purpose, has often been held. See Nealis v. Dicks, 72 Ind. 374, and cases cited; Blakesley v. Johnson, 13 Wis. 592; Freeman Judg., section 492.

Under the radical changes introduced by the modern procedure, resort to a separate proceeding for the purpose of obtaining equitable relief is, under some circumstances, rendered wholly unnecessary. In the one "civil action" provided by that procedure, "The court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights" (section 22, Code of 1852; section 272, R. S. 1881); and "The defendant may set forth in his answer as many grounds of defence, counter-claim, and set-off, whether legal or equitable, as he shall have." Section 56, Code of 1852; section 347, R. S. 1881.

Whether, in a case requiring a decision of the question, fraud in obtaining a judgment has or has not been expressly and distinctly recognized by this court as an equitable defence under the reformed procedure, it has been so regarded and admitted by other courts and by learned expositors, and the proposition is beyond question. Dobson v. Pearce, 12 N. Y. 156; Mandeville v. Reynolds, 68 N. Y. 528; Stowell v. Eldred, 26 Wis. 504; Rogers v. Gwinn, 21 Iowa, 58; Pomeroy Eq. Jur., section 86, n. 1; Id., section 919; Bliss Code Plead., section 347–351 and notes.

Ruffner was not a party to this suit. The appellee did

not and could not complain of the judgment on Ruffner's behalf, but he sought to protect his own interest in the land against the judgment plaintiff's claim of title through the sale and conveyance of the land to him, under his judgment. At the time of its rendition, the judgment did not affect any rights of the appellee. Afterward the judgment defendant conveyed the land to the appellee by warranty deed in fee simple.

Could the appellee ask a court to interfere in his behalf, as against the conveyance to the judgment plaintiff, under his judgment?

Appellee received his conveyance, with constructive notice of appellant's judgment lien, and it does not appear from the finding whether or not he had actual notice, if that could affect the matter.

It does not appear that there was any collusion in the procurement of the judgment for the purpose of defrauding the appellee.

The burden was upon the appellee to impeach the appellant's title. He does not, upon the facts stated, appear to have any right to attack that title. *French* v. *Shotwell*, 5 Johns. Ch. 555; *Shufelt* v. *Shufelt*, 9 Paige, 137; *Marriner* v. *Smith*, 27 Cal. 649; Bigelow Fraud, 175.

The judgment should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be reversed, at appellee's costs, and that the cause be remanded, with instructions to state conclusions of law in accordance with said opinion, and to enter judgment accordingly.

## ON PETITION FOR A REHEARING.

BLACK, C.—We have examined again the question involved in this case, under a petition for a rehearing, and after careful consideration we have found no reason to modify the conclusion before reached. We take this occasion to indicate more definitely the grounds of our decision.

A judgment of a court having jurisdiction is conclusive of the issue involved, as between the parties and their privies. Fraud in the procurement of the judgment is an extrinsic and collateral fact, and constitutes ground for a direct attack upon the judgment by a party thereto, by an application corresponding to an original bill in equity.   Whether there is in this State any other mode of direct attack for such cause, as by application for a new trial, we need not here examine.   Whether a party to a judgment should be permitted to impeach it collaterally for fraud in obtaining it, is a question which presents no difficulty under the code, which permits equitable defences, as we took occasion in our original opinion to show, by way of introduction and in agreement with the position assumed on that point in the argument of counsel for the appellee. But here there is no contest between the parties to the judgment.   The appellant properly introduced the judgment in evidence as the foundation of his claim of title.   The appellee was not a party or privy to that judgment, but was a stranger.   His certain property was subject to the judgment to the extent to which it might exhaust that property, purchased by him subject to the lien thereof.

A stranger to a judgment or decree may impeach it collaterally, at law or in equity, for fraud in its concoction.   This is a general statement of limited applicability, and needs illustration.   It is sometimes said that fraud renders void a judgment procured thereby; and it is thereupon insisted on behalf of the appellee that the judgment in question must be treated as a nullity; but such expression, like that in reference to the impeachment of judgments and decrees by strangers, must be interpreted by the facts of the cases in which it is used.   When it is said of a judgment of a domestic court, in a cause in which the court had jurisdiction of the subject-matter and of the parties, and the contrary is not pretended, that it is void because of fraud in its procurement, this must be understood in a qualified sense.   It means that the judgment will be treated as a nullity when the fraud has been

shown in a proper proceeding between proper parties, and by competent evidence. Until this has been done, the judgment, valid on its face, is voidable only, and must be treated and enforced as a valid judgment.

Counsel have mentioned no case, and we have found none, which seems to us to sustain the appellee's attack upon the judgment in question.

In *Duchess of Kingston's Case*, 2 Smith's Leading Cas. 609, it was said in the opinion of the judges, pronounced by Lord Chief Justice DeGrey: "In civil suits, all strangers may falsify, for covin," (that is, collusion), "either fines, or real or feigned recoveries; and even a recovery by a just title, if collusion was practiced to prevent a fair defence; and this, whether the covin is apparent upon the record, as not essoining or not demanding the view, or by suffering judgment by confession or default; or extrinsic, as not pleading a release, collateral warranty, or other advantageous pleas;" and that "collusion, being a matter extrinsic of the cause, may be imputed by a stranger, and tried by a jury." The case was a prosecution of the Duchess of Kingston before the House of Lords for bigamy, and the language above quoted was in an opinion in response to interrogatories propounded by the Lords. It was held by the judges that a sentence in a suit for jactitation of marriage, which was not *in rem*, but was *in personam*, brought by the defendant in the criminal action against her first husband, was not conclusive against the crown in the criminal action, the parties not being the same; and it was said that, admitting the sentence of jactitation to be conclusive upon an indictment for bigamy, the counsel for the crown might, nevertheless, be admitted to avoid the effect of such sentence by proving the same to have been obtained by fraud or collusion.

The fraud in the suit for jactitation of marriage was not fraud practiced by one party to the suit upon the other party, but was collusion of the parties, and public policy was a suf-

ficient reason for permitting impeachment by the crown on the ground of collusion.

In *Shedden* v. *Patrick*, 1 Macq. Ap. Cas. 535, 607, the Lord Chancellor said he did not wish it to be understood that he concurred in the suggestion " that under no circumstances can a judgment of your Lordships' House be called in question, if it be established that it was not a judgment in a *bona fide* suit, but obtained by the fraudulent collusion of both parties, in order, either by means of that judgment, to defeat the objects of public justice, or to defeat the rights of one of the nominal parties, he being an infant, whose rights were under the guardianship of another," a colluding party, his factor *loco tutoris*. It was said, on page 620, that the only question in such cases of impeachment is whether the former judgment was a real judgment or not.

In *Harrison* v. *The Mayor*, etc., 4 DeGex, M. & G. 137, on a question of legitimacy, where there was evidence of a sentence of nullity of the marriage in the consistorial court of Winchester, for want of the consent of the father of the wife, it was permitted to the heir to show in avoidance that the sentence was procured by collusion of the parties, the husband and wife, and that her father did consent.

*Meddowcroft* v. *Huguenin*, 4 Moore (Privy Council), 386, was a cause brought in the prerogative court, in 1842, citing the respondent to show cause why letters of administration should not be revoked. The respondent in her responsive allegation pleaded a sentence passed in 1816, in a cause in the consistorial court of London, annulling the marriage of the appellant's father and mother before the birth of the appellant, said cause having been brought by the father and guardian of the appellant's father against the appellant's mother. The appellant responded that said sentence was not valid as against the appellant, because of collusive conduct of his father and mother, by which there was no *bona fide* contestation of the suit to annul the marriage, and the true state of the facts was suppressed. It was held, on demurrer, that

collusion would make a judgment a nullity, if between the parties, but that here, though the facts stated, if proved, might amount to fraud, there was no collusion, and the former judgment was not impeachable on the facts stated. See *Perry* v. *Meddowcroft*, 10 Beav. 122, 131; *Meddowcroft* v. *Huguenin*, 3 Curteis, 403.

The impeachments of judgments by third persons most frequent are by creditors of the judgment defendant. Judgments are expressly mentioned among the modes of defrauding creditors provided against by the statute. 13 Eliz. Ch. 5, and section 17 of our statute of frauds.

In 3 Chit. Pl. 1166, precedents are given of replications, in an action against an executor, to a plea of a judgment already recovered by a third person against the executor, and that he had fully administered, except goods of a value not sufficient to satisfy such judgment, the replication in one precedent being that the judgment was had and obtained "by the fraud and covin of the said defendant, and with the intent to defraud the said plaintiff of his debts;" and in another precedent that the defendant permitted and suffered the said judgment to pass against him for more than was due and owing from the testator to the judgment plaintiff, "by the fraud and covin of the said defendant and the said judgment plaintiff."

In *Dougherty's Estate*, 9 W. & S. 189, it was said: "It is contended, however," (by creditors) "that the judgment is fraudulent, because he who confessed it was defrauded. A surreptitious judgment, however, is fraudulent only as to the immediate parties."

In *Thompson's Appeal*, 57 Pa. St. 175, where a bond and warrant of attorney, upon which a judgment was entered, was executed by the judgment defendant upon a false representation as to the amount secured by them, it was said that the judgment defendant was the only person who could set aside the judgment for that reason; that his judgment creditors might attack a judgment collaterally when it was a fraud upon them, as where there had been collusion between the

debtor and the creditor, but they could not set it aside merely because it was a fraud upon the debtor; that if the judgment defendant had been defrauded into giving a judgment, it could not have been given with a secret agreement to defraud others. His consent being wanting, there was no collusion. See, also, *Drexel's Appeal*, 6 Pa. St. 272; *Lewis* v. *Rogers*, 16 Pa. St. 18; *State* v. *Fife*, 2 Bailey, 337; *Den.* v. *Gaston*, 4 Zab. 818; *Candee* v. *Lord*, 2 N. Y. 269; *Gere* v. *Gundlach*, 57 Barb. 13; *Harker* v. *Glidewell*, 23 Ind. 219; *Adkins* v. *Nicholson*, 39 Ind. 535; *Feaster* v. *Woodfill*, 23 Ind. 493; *Harbaugh* v. *Hohn*, 52 Ind. 243; *McAlpine* v. *Sweetser*, 76 Ind. 78; Bump Fraud. Convey. 17, 18. .

A mortgagee may collaterally impeach a judgment affecting him, entered by collusion, but not a judgment recovered through fraud practiced by the judgment plaintiff upon the judgment defendant, the mortgagor. *Mason* v. *Messenger*, 17 Iowa, 261; *Hackett* v. *Manlove*, 14 Cal. 85; *Esty* v. *Long*, 41 N. H. 103; *De Armond* v. *Adams*, 25 Ind. 455.

A surety may collaterally impeach a judgment rendered against his principal, where it was obtained by collusion between the creditor and principal debtor to defraud the surety. *Riddle* v. *Baker*, 13 Cal. 295; *Douglass* v. *Howard*, 24 Wend. 35; *Annett* v. *Terry*, 35 N. Y. 256; *Bridgeport, etc., Co.* v. *Wilson*, 34 N. Y. 275; *Great Falls, etc., Co.* v. *Worster*, 45 N. H. 110; *Beyer* v. *Williams*, 4 McLean, 577; *People* v. *Downing*, 4 Sandf. 189; Bigelow Est., 3d ed., 97, n. 1.

The rights of persons to the title of lands may not be shifted and postponed to their juniors by merely colorable proceedings, to which such persons are not parties, and which are collusively conducted for the purpose of cutting off the prior title; and a judgment so obtained may be impeached for fraud by the stranger thereto, whose existing title is affected by it, and to defraud whom it was obtained. *Atkinson* v. *Allen*, 12 Vt. 619; *Webster* v. *Reid*, 11 How. 437; *Caswell* v. *Caswell*, 28 Maine, 232; *Inman* v. *Mead*, 97 Mass. 310.

A purchaser of real estate for a valuable consideration is

protected by statute (27 Eliz. ch. 4; sections 12 and 13 of our statute of frauds), but the fraud from which he is so protected must be the fraud of one under whom he claims title, and if he purchase with actual or legal notice of a prior fraudulent conveyance, there must have been collusion to avail him.

A judgment confessed without authority could not be set aside, directly or collaterally, by a terre-tenant, who came in under the defendant. It was said: "Even a collusive judgment, though a nullity as to creditors, is conclusive between the parties to it; and a terre-tenant claiming by conveyance from the defendant, stands on no higher ground." *Davidson* v. *Thornton,* 7 Pa. St. 128.

In *French* v. *Shotwell,* 5 Johns. Ch. 555, cited in our original opinion, the original judgment was upon a bond and warrant of attorney, and constituted a part of the fraudulent imposition (see *Shufelt* v. *Shufelt,* 9 Paige, 137, 147; *Mason* v. *Messenger,* 17 Iowa, 261; *Wilhelmi* v. *Leonard,* 13 Iowa, 330). It was said: "TenBroeck, the original party to the judgment, might have impeached it for fraud." This, of course, could not have been for matter of mere defence. The Chancellor further said, speaking of the original judgment: "If a judgment was fraudulent by collusion between the parties to it, on purpose to defraud a subsequent purchaser, the case would present a very different question. But if the judgment was fraudulent only as between the parties, it is for the injured party alone to apply the remedy. * *   Feuds and litigation would be interminable, if any distinct purchaser of distinct parcels of land, affected by a judgment, existing, and known when they became interested, could overhaul the judgment upon an allegation of usury, extortion or fraud, practiced upon their principal, the vendor, when he himself chooses to acquiesce in the alleged injury, or has expressly waived all complaint. It is stated to have been a principle of the common law, that a fraud could only be avoided by him, who had a prior interest in the estate affected by the fraud, and

not by him who, subsequently to the fraud, acquired an interest in the estate. (*Upton* v. *Basset,* Cro. Eliz. 445, and recognized in 3 Co., 83 a.) * * The judgment precludes, on general principles; for the purchaser voluntarily comes in under the judgment, *pro bono et malo,* and except in the special case in which the judgment was confessed collusively, and by a corrupt agreement to defraud some subsequent purchaser (a case hardly to be supposed), he must take the lien as he finds it, and has no business to interfere with the contracts of other people."

Counsel direct our attention to the fact that in *Marriner* v. *Smith,* 27 Cal. 650, cited in our original opinion, the court permitted the plaintiff to amend his pleadings. This was because the pleadings did not clearly show whether or not the judgment was a lien upon the real estate conveyed. If it could be shown that it was not a lien, the grantee might be relieved, though the judgment could not be impeached by the purchaser for fraud against the judgment defendant.

There was evidence on the trial of the case at bar, that the appellee, paid a valuable consideration for the land, though this was not shown in the special finding. If he took by warranty deed, paying full value for the land, he would have the equities of one whose land is bound for another's debt. But where one takes such a conveyance, with legal notice of a judgment lien upon the land, though he pay full value, he must rely upon his grantor's covenants and the equities arising out of the relation thus voluntarily assumed, without the right to impeach the judgment lien for fraud practiced against the judgment defendant alone in the procurement of the judgment. We know of no principle of law or equity or statutory provision authorizing him to impeach the judgment.

PER CURIAM.—The petition for a rehearing is overruled.