ARKANSAS SOUTHERN RAILROAD COMPANY *v.* LOUGHRIDGE.

Opinion delivered May 14, 1898.

1. RAILROAD—AUTHORITY OF CONDUCTOR TO EMPLOY SURGEON.—Where a railway employee is injured, while in the discharge of his duties, at a point distant from the company's chief offices, and there is urgent necessity for the employment of a surgeon to render professional services, the conductor, if he is the highest agent of the company on the ground, has authority to bind the company by the employment of a surgeon to render the services required by the emergency. (Page 303.)

2. JUROR—COMPETENCY.—Under the statute which provides that "no person shall serve as a petit juror who is related to either party to a suit within the fourth degree of consanguinity or affinity," a verdict in an action by a physician for professional services will not be set aside because of the relationship of a juror to another physician, who assisted in performing the services, and was in some way interested in the result of the suit, where such relationship was known before the trial. (Page 305.)

Appeal from Union Circuit Court.

CHARLES W. SMITH, Judge.

*Jesse B. Moore* and *Morris M. Cohn*, for appellants.

There is no evidence that appellee was employed by appellant or any one acting for it. The appellant was not bound to furnish medical attention for the person injured; nor could any conductor or general manager bind it by a contract for same, without authority from the board of directors. 48 Ark. 188; 8 Ark. 227; 20 Ark. 251; 23 Ark. 411; 31 Ark. 212; 34 Ark. 246; 39 Ark. 580; 40 Ark. 251; 41 Ark. 177; 42 Ark. 188; 51 Ark. 483; 53 Ark. 208, 377; 62 Ark. 33, 40; 54 Mo. 177; Bish. Cont. § 1066; 72 N. W. 997. If any verdict was justi-

fied for medical attention in this case, it should have been a joint verdict, in favor of appellee and the physician who assisted him. 10 C. B. 739; 1 Exch. 644. One of the jurors was related to one of the parties interested in the verdict; hence the verdict can not stand. 32 Me. 310; 47 Me. 593; 28 Ga. 439; 60 Ga. 550.

*W. D. Jameson* and *Bradshaw & Williams*, for appellee.

The conductor of appellant's train asked appellee to attend to the injured boy. This raised an implied promise to pay for such services. The jury so found, and, their finding being supported by evidence, this court will not disturb it. 16 Ark. 237; 23 Ark. 112–159; 17 Ark. 331–335; 25 Ark. 89. The necessity of the occasion authorized the conductor to contract for necessary medical attention. 22 Am. & Eng. R. Cas. 371; 98 Ind. 358; 49 Am. Rep. 752; 29 Md. 420; 1 Am. & Eng. R. Cas. 343; 24 Kas. 228. The physician whom appellant procured to help him was not a necessary or proper party to an action against the railway company. Even if he had been, appellant waived the right to object on this ground by going to trial without objection and answering the complaint. 30 Ark. 399; 54 Ark. 525. Error in permitting testimony, improper but not prejudicial, to go to the jury, is not reversible. 17 Ark. 404; 20 Ark. 216. It was not error for the court to refuse a new trial on the ground of newly discovered evidence, because there was no affidavit filed in regard to it. Sand. & H. Dig., § 5842. Also, because the application did not show that the evidence was not cumulative, or would not tend to prove facts directly in issue on the trial. 2 Ark. 33; *ib.* 133; *ib.* 346; 11 Ark. 671; 26 Ark. 496. This court will not control the discretion of the trial court as to granting or refusing such applications for new trial, unless the record shows an abuse of such discretion. 54 Ark. 364; 41 Ark. 229.

BUNN, C. J. This is a suit, tried in the Union circuit court, to recover the value of services rendered by the appellee as physician and surgeon in attending upon a brakeman of appellant company, who had fallen from the cars near Cargile in

Union county, and had one leg crushed, and was otherwise hurt and bruised.

Defendant's train, proceeding northward, had approached near Cargile, one of its stations, when Bascom Williams, a brakeman employed in running the train, was thrown from the cars, and was wounded as stated. The appellee, a regular practicing physician, residing in El Dorado, a few miles north of Cargile, happened to be a passenger on the train at the time. When the accident occurred, the train stopped, and the conductor, Walsh, hurried to the scene of the accident to ascertain what was the matter, having heard that a man was hurt, and, in passing through the passenger coach, requested appellee (as appellee states) to go with him, and look after the wounded man, not knowing, as we infer, at the time, who had been hurt, nor the nature of his hurt; and the appellee did so. The conductor denies having made the request of appellee to go and look after the wounded man, but says he went on his own accord. The other evidence is somewhat conflicting as to this, and it was a question for the jury, and they determined it in favor of plaintiff.

Appellee found the said Bascom Williams, with one leg crushed, and otherwise wounded and bruised, and bleeding profusely. He soon got the hemorrhage under control, and sent for Dr. Kelly, the company's regularly employed physician. It became necessary for appellee to go at once to his office in El-dorado to procure the necessary instruments and appliances and professional assistance, and return to amputate the broken limb. Cargile, who seems to have been nothing more than a stockholder in the railroad company, perhaps a director at most, being informed of appellee's desire and intention to proceed to El Dorado for the purposes stated, immediately sent him forward on the engine, and at El Dorado the appellee engaged the services of Dr. W. J. Pinson, another regular practicing physician of that place, and they returned to the scene of the accident, and immediately amputated the broken limb; but, finding the bruises extending higher than at first appeared, for want of sound skin to make the necessary flap, a second amputation was made. The patient died the following day.

Some doubt seems to have been entertained as to whether

the company was liable for the services thus rendered, and considerable negotiation seems to have been had on the subject. C. C. Henderson, the general manager of the company, at one time promising to assist in paying the bill, to the extent of fifty dollars, not as a liability however, but as a voluntary contribution, as we infer.

The main question, as may be readily seen, is whether or not the railroad company is responsible in any case for the contracts of an employee not made in the line of his employment, and he having no express authority to make them; and, if so, under what state of circumstances this liability attaches to it. This is a mooted question, but the weight of authority seems to sustain the doctrine that in case of an emergency the employment (of a physician for instance) by the highest railroad official present is the act of the company, and it will be liable for the value of the services rendered to one in the employ of the company injured by the running of its trains.

In *St. Louis, A. & T. R. Co.* v. *Hoover*, 53 Ark. 377, Hoover, a physician, at the instance of the conductor of defendant company's train, rendered medical services to a passenger injured by the running of the train, and sued the company for the value of his services. This court said in that case: "Neither a conductor, station agent, nor solicitor of a railway company is authorized, in ordinary cases, to contract for surgical attendance upon a passenger or employee injured in operating the train of the railway company, so as to bind the company [citing a list of authorities.] It has been held that where such injury is done at a point distant from the chief offices of the company, and there is urgent necessity for the employment of a surgeon to render professional services to an injured employee, the conductor, if he is the highest agent of the company on the ground, has authority to bind the corporation by the employment of a surgeon to render the services required by the emergency. [Citing authorities.] The authority existing in such cases is exceptional; it grows out of the present emergency and the absence—and consequent inability to act—of the railway's managing agent; its existence cannot extend beyond the causes from which it sprang."

The reason given for the exceptional rule is the absence

and consequent inability to act of that one of the railway's agents capable of and authorized to make contracts for the company. That is a secondary reason, but it may not be the basic reason, for ordinarily even one authorized to make contracts generally is not authorized to make contracts to assume for the company liabilities properly resting upon another. But the rule is not, on that account, to be disregarded. It has other reasons to support it. A very able opinion on the subject is to be found in *Terre Haute, etc. R. Co.* v. *McMurray*, 90 Ind. 358, where the facts are very much like those in the case at bar; the court holding the company liable under the peculiar circumstances. *Marquette, etc., Ry. Co.* v. *Taft*, 28 Mich. 289, was a case where a laborer engaged in the company's service was injured by the train. The trial court had rendered judgment for the defendant, and on appeal the judgment was affirmed, but under the rule that a judgment will be affirmed unless a majority of the judges are for reversal. In that case, Graves and Campbell, JJ., were for affirmance, on the grounds that "no officer of the company could bind it to pay for surgical services rendered an employee. Chief Justice Christiancy and Justice Cooley were for reversal, for the reason stated by Judge Cooley thus: "We think it their [the company's] duty to have some officer or agent at all times competent to exercise a discretionary authority in such cases, and that, on grounds of public policy, they should not be suffered to do otherwise." The court was thus equally divided. The two cases are very instructive, and they and the cases cited therein give a very full understanding of the scope of the controversy and the reasoning on each side. In the course of his argument in the latter case, Judge Cooley said: "We shall not stop to prove that there is a strong moral obligation resting upon any one engaged in a dangerous business to do what may be immediately necessary to save life or prevent an injury becoming irreparable, when an accident happens to a person in its employ. We shall assume this to be too obvious to require argument."

It may be that it is the legal as well as the moral duty of the company, under such circumstances, to do all it can to prevent an injury to one of its servants from having its worst consequences, just as it is its duty to do all it can to prevent

the injury in the first instance, when informed that the danger is impending. Whatever may be the reason, it is a case in which some one should act, and without delay, and the equities are in the idea that the employer is under a greater obligation to do so than any one else not otherwise bound. The liability should not be extended beyond the exigencies of the occasion, and the extraordinary rule should be most strictly construed, and applied with the greater caution, and all the conditions upon which it is based should appear in every case when it is applied.

The objection to T. J. Babb, as a juryman, on account of his relationship to Dr. Pinson, under the statute (Sand. & H. Dig., § 4256) is also untenable, since Pinson, although in some way interested, as we might say, in the result of the suit, is yet no party to it, and, besides, his interest is too uncertain to say that a verdict should be set aside for that reason. Furthermore, his relationship might have been brought out on his voir dire, as Pinson's connection with the matter was as well known at first as at last.

The newly discovered evidence concerning the declarations and admissions of the plaintiff would be merely cumulative of the other evidence going to show plaintiff's doubts as to the liability of appellant for his fee.

We think that the emergency under which the conductor acted in requesting the appellee to go and see the injured man (meaning to attend him) was such as to make his act binding upon the company, under the rule; that the charge was reasonable; and that the other objections, if tenable, do not constitute reversible errors. The judgment is therefore affirmed.