G. A. SMITH v. THE CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

**Principal and Agent.** A telegram from the chief surgeon of a rail-
way company directing the sendee, a district surgeon in another
district, to go to a specified employe who had been injured, as
soon as possible, and notify the agent and local surgeon of the
company at the place when he will be there, does not give such
sendee any apparent authority to employ another physician to
assist him.

**Estoppel by Testifying.** The court instructed that if, on the trial of
another cause, plaintiff in this cause, *for the purpose of enabling
another to recover against the defendant for personal injuries,*
gave testimony that he was the physician in attendance, and per-
formed the services, and of their value, thus enabling that other
to recover of the defendant for such services, he was estopped to
recover in this suit. It was also charged that if, when plaintiff
testified in the prior case as to the value of his services, he added
that he had a suit pending against the defendant for the services,
and that he expected to collect for the services from the defend-
ant, then there would be no estoppel. *Held,* that both instructions
were proper.

SAME. Failure of a physician who attended an employe of a railway
company to state while testifying as a witness for such employe
in an action against the company, that he has a suit pending
against the company for his services, does not estop him from
subsequently recovering from the company for such services, on
the ground that the employe was enabled by his testimony to
recover therefor from the company. It was not the duty of the
witness to decline to answer nor to inform the court that he had
a suit pending for such services.

**Instructions: CONFLICT.** An instruction authorizing the jury to
consider, for the purpose of determining whether a physician
employed by defendants to attend an injured employe had appar-
ent authority to employ plaintiff to assist him, the facts that the
physician said to plaintiff that the company would pay him for
his services and that he was only to assist the company's physi-
cian who was to remain in charge of the case, and that plaintiff
was to report the condition of the patient to the company's
physician and to make such reports and have the free use of the
telegraph service of the company, is improper and irreconcilable
with another instruction correctly stating as the law that, "none

of the declarations or statements" of, the company's physic'an to plaintiff can be considered by the jury as any evidence that he had any authority to employ plaintiff.

*Appeal from Clinton District Court.*—HON. P. B. WOLFE, Judge.

SATURDAY, DECEMBER 18, 1898.

THE plaintiff is a physician residing at Clinton, Iowa. In December, 1891, one Denton Olney was a fireman in the employ of the defendant company, and was injured by his knee striking a switch target. Dr. Hobart, who was the company's district surgeon at Clinton, was called to see Olney, and treated him for a short time, when, because the family was dissatisfied, he was discharged, and one Dr. Finley was employed. The condition of the patient became serious, and a brother of his went to Chicago and saw the chief surgeon of the company, Dr. Owens. Upon consultation, Dr. Owens telegraphed Dr. Fairchild, who was the company's district surgeon at Ames, Iowa, to go to Clinton and see the patient, Olney, which he did. After an examination of the patient, and dressing his wound, Dr. Fairchild had a consultation with the plaintiff as to the treatment to be given, and the plaintiff rendered professional services until the case was discharged; and this action is for the value of such service. The theory on which it is sought to hold the defendant liable is that Dr. Fairchild employed plaintiff, on behalf of the company, and that the service was rendered in pursuance of such employment. The defendant presented a general denial, and also, by way of estoppel, pleaded that the said Olney brought a suit against the defendant company for his damages because of such injury, which was tried in the United States circuit court, and claimed as a part of his damages the amount alleged to be due plaintiff in this suit, and recovered the same, and that

plaintiff was a witness in that suit, and gave testimony showing the service rendered, and the value thereof, for the purpose and object of enabling Olney to recover therefor. The issues were tried to a jury, that returned a verdict for plaintiff, and from a judgment thereon the defendant appealed.—*Reversed.*

*N. M. Hubbard* for appellant.

*Hayes & Schuyler* and *G. B. Phelps* for appellee.

GRANGER, J.—I.  We first notice the question arising, and argued, presented by the denial in the answer, which is a claim that the services were not rendered under an employment by the defendant company. The testimony as to the fact of an employment by Dr. Fairchild is in conflict, but there is a frank concession by counsel for appellant that its condition is such that this court cannot interfere with the finding, if Dr. Fairchild had authority to bind the company by his acts in that respect. It may be stated, as without dispute, that, prior to being summoned to Clinton to see Olney, Dr. Fairchild had no business connection with the defendant in what is known as the "Clinton District," his duties for the company being confined to other territory in the state. The following is the telegram in pursuance of which he went to Clinton: "D. S. Fairchild:  Please go to Clinton, as soon as you can, to see C. H. Olney. Notify the agent and Dr. Hobart when you will be there. John E. Owens." A published rule of the company is that "the company will not pay for the services of any other surgeon, after the arrival of their own local surgeon, except by special arrangement in writing with the chief surgeon or general claim agent." It does not appear that the plaintiff knew of this rule, but it is important, as showing the actual authority of local surgeons to employ others. An

instruction, in effect, took from the jury any question of ratification by the company of what Dr. Fairchild did, and also instructed that there was no evidence tending to show that, at the time in question, "district surgeons either had or exercised any authority in employing surgeons outside the limits of their respective districts." With this condition of the record, the question comes to this: Had Dr. Fairchild such apparent authority as that the company is bound by his acts, assuming that he did employ Dr. Smith? The court, in express terms, told the jury that "none of the declarations or statements of Dr. Fairchild to the plaintiff or to Olney can be taken or considered by you as any evidence that he had any authority to employ the plaintiff." It then, in the same instruction, said to the jury that such declarations and statements were only for the purpose of showing that Dr. Fairchild did or did not employ Dr. Smith, and as to such a rule there is no complaint. On the question of Dr. Fairchild's apparent authority, the court gave the following instruction: "(10) When a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business is justified in presuming that such agent has authority to perform, on behalf of his principal, a particular act, and such act having been performed, the principal cannot deny, as against the innocent third party, the agent's authority to perform; and in this case, if you find from the evidence that Dr. Owens told Mr. Olney's brother, when he called to see him, in Chicago, that he would send a physician to Clinton to see his brother, knowing at the time that the district surgeon of the company had been for some weeks discharged, and was not in care of the patient, and that, in pursuance of said promise, Dr. Fairchild came to Clinton, and operated on said Olney, and that he agreed

to take charge of the case, and that the plaintiff knew that fact, and knew that the defendant paid for assistance rendered to the district surgeons in cases in their district, and also that when he was employed, if you find that Dr. Fairchild did employ him, he was told by Dr. Fairchild that the defendant would pay him for his services; that he was only to assist Dr. Fairchild, who was to remain in charge of the case; that he was to report the condition of his patient to Dr. Fairchild, and, to make those reports, he was to have free of charge the telegraph service of the defendant,—and that he so reported to Dr. Fairchild, using the defendant's telegraph, and sending the reports through their assistant superintendent at this place, it is for you to say, from those facts, if you find them established by the evidence, and from all the facts and circumstances in evidence in the case, whether or not the plaintiff, as a reasonably prudent man, had a right to believe that Dr. Fairchild had authority to employ him as an assistant in the case, or not." It is said by appellant that this instruction, and the one excluding the declarations and statements of Dr. Fairchild from the consideration of the jury in determining his authority, are inconsistent. It seems to us that there is no avoiding the conclusion. It was likely the view of the court that the statements in the instruction quoted, or what Dr. Fairchild said to the plaintiff, as expressed therein, are not of the character which the law would exclude. We assume this, because otherwise there would be a want of consistency in the court's expression of its own views. It is important to have in mind that there is but a single purpose in the instruction, which is to direct the jury as to facts that might be considered, and that would warrant a finding that Dr. Fairchild had apparent authority to employ plaintiff. The instruction, in express terms, authorized the jury to consider for that purpose the facts that Dr. Fairchild said to plaintiff that the defendant would pay

him for his services; that he was only to assist Dr. Fairchild, who was to remain in charge of the case; that he was to report the condition of the patient to Dr. Fairchild, and, to make those reports, he was to have free use of the telegraph service of the defendant. It seems to us that these facts are of the class that cannot be considered to show authority, under the rule given by the court. That the instruction only permits the conclusion that there was apparent authority by these facts being considered with other facts, does not change the rule. The effect is to aid facts proper for consideration, by those that are not. It is to be understood that, as to these facts, their effect is not made to depend on the company's knowledge of them, as is true of one or more of the other facts stated, but that they are for consideration absolutely, without regard to that fact. In Mecham, Agency, section 276, it is said of an agent that he "cannot establish his own authority, either by his representations, or by assuming to exercise it." If Dr. Fairchild said these things, and he had no authority, he was assuming to exercise authority, and that fact cannot be shown to establish his right to do so. A rule very applicable to this case, whether invariable or not, is stated in *Kane v. Barstow*, 42 Kan. Sup. 465 (22 Pac. Rep. 588), as follows: "The rule that a principal is bound by the acts of his agent which are within apparent scope of his authority is applicable only where there have been previous transactions of a similar character, in which the agent exceeded his powers, but which the principal ratified without question, the other party being ignorant of the limitation of the agent's authority, thereby leading him to believe that the agent had all the powers claimed."

Having in view the language of the telegram by which Dr. Fairchild was authorized to go to Clinton, and other undisputed facts, it may be stated as established conclusively that his authority was to render his

personal service, and no more.  His duty was of a professional nature, not involving such business transactions as are common to agents, where implied powers attach because within their apparent scope.  The service he was authorized to render justified no inference of an authority to employ another, and it is quite impossible to understand what he could have done at that time to properly indicate an apparent authority, if his own statements would be incompetent for that purpose. It would seem, as held in the Kansas case, that, to give his acts the force of apparent authority, there must have been previous transactions of a character to have justified the plaintiff in believing that such authority did exist.  Appellee cites us to no authority to sustain the rule of the instruction, and it seems to us that the general rule is against it.  There is really no controversy as to the general rules of law.  The contention is as to their application to the facts of this case.  With the objectionable evidence out, the remaining evidence is not sufficient to justify a finding of authority on the part of Dr. Fairchild.

II.  As to the estoppel pleaded, the court instructed that if, on the trial in the federal court, the plaintiff in this case was a witness, and for the purpose of enabling Olney to recover against the defendant, he gave testimony that he was the physician in attendance and performed the services, and of their value, thus enabling Olney to recover of the defendant for such services, he was estopped to recover in this suit. This was followed by an instruction in these words: "(14) If you believe from the evidence that at the trial at Dubuque, and when the plaintiff was examined as a witness, in answer to the question with reference to his bill for services in attendance upon said Olney he said: 'I have a suit pending against the company for my services, and I expect to collect for my services from

the defendant,' or words of a similar effect or import, then, and on your so finding, there would be no estoppel, and the defendant would fail as to this branch of its defense." The complaint is as to the instruction quoted. We think the instruction correct. If the witness so stated, there could have been no finding that he gave his testimony for the purpose of enabling Olney to get a judgment for such services in the federal court, in any illegal or wrongful sense. The plea of estoppel is made to depend on the *purpose* and *object* with which Dr. Smith gave his testimony, and the court submitted Smith gave his testimony, and the court submitted this branch of the case on that theory. It is thought that it was the duty of Dr. Smith, when asked in the federal court about his services to decline to answer, and inform the court that he had a suit pending for such services. We think that Dr. Smith owed no such duty to the defendant. He was a witness in court, and, in a sense, under the direction of the law. The defendant was present, with full opportunity to insist upon a disclosure of the facts; and if the witness gave them, and in so doing, it was made to appear that he was a claimant for such services himself, the basis for an estoppel failed. For the reasons stated in the first division of the opinion, the judgment will be REVERSED.