BONNETTE *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered July 13, 1908.

RAILROADS—AUTHORITY OF CONDUCTOR TO EMPLOY SURGEON IN EMERGENCY.
—Where a stranger was seriously injured by the operation of a train at a point distant from the company's chief offices, and there is immediate necessity for the employment of a surgeon to render professional services, the conductor, if he is the highest agent of the company on the ground, has authority to bind the company by the employment of a surgeon to render the services required by the emergency.

Appeal from Drew Circuit Court; *Henry W. Wells,* Judge; reversed.

STATEMENT BY THE COURT.

·The appellant sued the appellee, alleging in his complaint: "That on or about the 15th day of January, 1907, the said defendant, the St. Louis, Iron Mountain & Southern Railway Company, by its employees operating and running a locomotive engine or train of cars over its railroad track through Montrose, a station of said line of its railroad, then and there ran or backed said locomotive, engine or train of cars against and over one Fred Ross, a stranger, and then and there, and thereby, seriously or fatally injured him by then and there crushing, under its wheels, both thigh bones, etc.; that the injury occurred in the night time, and that it was of a character so serious and that the emergency was so great as to require immediate surgical or medical attention; that the necessity and emergency of the occasion authorized the conductor to contract for medical services;

that the said station of Montrose is many miles distant from the principal offices of the defendant and from the residences of its principal officers, and that the conductor in charge of said train, and as the agent of the defendant, employed the plaintiff, who as aforesaid was a resident surgeon at said station, to render professional services to the said Ross, and that he, in accordance with said request and employment, rendered the said Ross surgical aid and attention. That plaintiff, assisted by Dr. W. H. Shipman, acting at the request and under the employment of said conductor, took charge of said patient, Ross; that it became and was necessary to amputate both thighs; that the plaintiff, assisted by Dr. W. H. Shipman, performed said operations or amputations; that services so rendered, and money expended for unskilled labor, medicine, etc., were of the value of one hundred and twenty-four and 50-100 dollars ($124.50); that said conductor was the highest representative of the defendant and superior officer present when the accident or injury occurred, and when said employment was made. That the defendant refused and still refuses to pay said claim, notwithstanding repeated demands have been made therefor. Wherefore plaintiff prays judgment," etc.

The appellee demurred as follows: "Comes the defendant, the St. Louis, Iron Mountain & Southern Railway Company, by its attorney, E. A. Bolton, and demurs to the complaint herein, and for cause states: That said complaint fails to state facts sufficient to constitute a cause of action against the defendant herein; that said complaint fails to state that the conductor of freight train 156 had any authority to contract for the services alleged to have been contracted for with plaintiff herein, and fails to state any facts that would bind defendant for the contract of said conductor in employing the plaintiff herein; that said complaint is otherwise informal and insufficient in law to constitute a cause of action against the defendant."

The court sustained the demurrer and dismissed the complaint, and this appeal followed.

R. W. Wilson, for appellant.

In view of the remoteness of the place at which the injury occurred, the lateness of the hour, the necessity and emergency

of the occasion and the fact that there was no one present higher in authority than the conductor, he was authorized to contract for the' necessary medical and surgical attention, and the company is bound thereby.   98 Ind. 358; 9 L. R. A. 1234; 65 Ark. 300; 28 Mich. 298; 29 Ind. 420; 18 Kan. 458.

*T. M. Mehaffy* and *J. E. Williams,* for appellee.

In ordinary cases a conductor of a railway company is not authorized to bind the company by a contract for surgical attendance upon a passenger or employee injured in the operation of a train.   53 Ark. 379.   And such cases cited by appellant, as hold that 'he had such authority, grow out of injuries to employees or passengers, and the existence of an emergency demanding immediate action.   98 Ind. 358; 65 Ark. 300; 28 Mich. 298, etc.   Here the injured party was neither employee nor passenger, but a stranger injured without fault or negligence on the part of appellee.   There was no obligation nor duty resting upon the company, and the conductor's act can not bind it.   30 Am. & Eng. R. Cas. (N. S.) 771; 72 Pac. 281; 16 Am. & Eng. R. Cas. (N. S.) 369; 44 *Id.* 461; 20 L. R. A. 695; 6 Rapalje & Mack's Digest, 391-398; 47 Ark. 239.

WOOD, J., (after stating the facts.)   This court in *Arkansas Southern Rd. Co.* v. *Loughridge,* 65 Ark. 300, held (quoting syllabus) : "Where a railway employee is injured, while in the discharge of his duties, at a point distant from the company's chief offices. and there is urgent necessity for the employment of a surgeon to render professional services, the conductor, if he is the highest agent of the company on the ground, has authority to bind the company by the employment of a surgeon to render the services required by the emergency."

This is the language of the court in *St. Louis, A. & T. R. Co.* v. *Hoover,* 53 Ark. 377, a case in which a doctor sued the railway company for surgical attendance upon and board of a passenger injured by the company's train.   In the latter case the court held the company not liable, for the reason that "the emergency, which alone could have given the conductor implied authority," had terminated before the doctor was employed.   The court further said:   "The authority existing in such cases is exceptional; it grows out of the present emergency, and the

absence—and consequent inability to act—of the railway's managing agent; its existence can not extend beyond the causes from which it sprang."

In *Northern Central Ry. Co.* v. *State*, 29 Md. 441, a stranger was injured in a collision, and the court said: "We are next brought to the question whether the defendant be liable for the negligence of its agents in their treatment and disposition of the deceased subsequent to the collision. This, we think, free from doubt or difficulty. From whatever cause the collision occurred, after the train was stopped, the injured man was found upon the pilot of defendant's engine, in a helpless and insensible condition, and it thereupon became the duty of its agents in charge of the train to remove him and do it with proper regard to his safety and the laws of humanity. If, in removing and locking up the unfortunate man, though apparently dead, negligence was committed, whereby death was caused, there is no principle of reason or justice upon which defendant can be exonerated from responsiblity. To contend that the agents were not acting in the scope of their employment in so removing and disposing of the party is to contend that the duty of the defendant extended no farther than to have cast off by the wayside the helpless and apparently dead man without taking care to ascertain whether he was dead or alive, or, if alive, whether his life could be saved by reasonable assistance timely rendered." In *Dyche* v. *Vicksburg, Shreveport & Pac. Rd. Co.*, 79 Miss. 361, Dyche was a trespasser, and was run over by the company's train. The company was not negligent in running its train over him, but after the injury the company's agents took charge of him, and undertook to administer to his needs in his wounded condition. The court said: "Assuming the charge of Dyche as it did, it was charged with the duty of common humanity, and the jury should have been allowed to pass upon whether or not it performed this duty. It is to be charged with no higher degree of duty than that of ordinary humanity, but the jury must settle that on the facts."

In *Marquette & Ontonagon Rd. Co.* v. *Taft*, 28 Mich. 289, at page 297, Judge Cooley said: "There can be no doubt that it is within the scope of somebody's employment for a railway company to cause a beast which is injured in carriage or run

over at a crossing to be picked up and have the attention proper and suitable to its case; and if no one is authorized to do so much for the faithful servant of the company who is in like manner injured, but all persons in its service are impliedly forbidden to incur on its behalf any expense beyond what may be necessary to remove him out of the way of their trains or machinery—even to convey him to his house, or to save his life by binding up a threatening wound,—then, if such is the law, the courts must not hesitate to apply it, even though it be impossible to avoid feeling that it ought not to be the law, and that no business of this extensive and hazardous nature ought to be suffered to be carried on with no one for the major part of the time impowered to recognize and perform a duty which, at least on moral grounds, is so obvious and imperative. But we do not think such is the law." In *Yazoo & M. V. Rd. Co.* v. *Byrd,* 42 So. 286, it is said: "Railroads owe to their passengers the consideration and care of ordinary humanity, it matters not how negligent a passenger may have been in producing the injury for which he sues; * * * and if, when injured, the railroad company neglects this care which common humanity would dictate, and the passenger suffers damage, he may recover against the railroad company for its dereliction."

I have quoted liberally from the above cases to show that the authorities, whether in the case of a stranger and trespasser or of an employee and passenger, hold the company liable for failing to exercise ordinary care to administer to the absolute needs of the one whose unfortunate injury it has produced, notwithstanding it may have been without fault in producing such injury, and notwithstanding the injury may have been the direct result of the party's own negligence. In so holding the company liable in such an emergency, it will be observed that the rationale of the doctrine, whether in the case of a stranger and trespasser, or of an employee or passenger, is found in the duty imposed by the dictates of common humanity. The authorities stress the moral obligation, and find from that the legal duty to alleviate as far as possible the sufferings and to administer to the necessities which the company has contributed, however innocently, to produce. We confess that if the duty, and the consequent liability for failure to discharge that duty, grow out of the obliga-

tions which the impulses of our common humanity would suggest and impose, under such circumstances, then we do not see that the status or relationship of the party injured to the party producing the injury could affect the question of the appellee's right to recover. For, from the humane viewpoint, clearly it could make no difference whether the helpless and unfortunate victim of the accident were trespasser, employee or passenger. We do not here either controvert or approve the doctrine of the above cases, but merely cite them to show the extent to which the authorities have gone. The doctrine of our own court, in the cases cited *supra*, although announced in cases where an employee and passenger were injured, applies here. It is a question of the authority of the conductor to act for his company. The emergency creates that authority. Some one, as Judge Cooley holds, must have authority to represent the company under such circumstances. The conductor is the highest agent on the ground, and is in command of the train that did the injury. Before sufficient time had intervened to ascertain whether the accident was caused by the negligence of the company, he certainly had at least the implied authority to protect his company by doing what might be necessary to lessen the damages in the event it should be afterwards ascertained that the company was liable. This authority would be sufficient to bind the company for his contract with the surgeon, but not for the surgeon's contract with others.

The judgment is therefore reversed, and the cause is remanded with directions to overrule the demurrer, and for further procedings not inconsistent with this opinion.