## John Aimone, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

### Gen. No. 5,763.

1.  MASTER AND SERVANT, § 7*—*what is authority of foreman to employ physicians.* Where a servant was taken suddenly sick and the foreman having supervision of such servant procured a physician, whereupon the servant was removed to a hospital, and subsequently operated upon, *held*, that the foreman had no authority to bind the master to pay for the physician's services at the hospital, since there was presumably time, before operating, to communicate with the officers of the master having apparent authority to employ the physicians.

2.  MASTER AND SERVANT, § 7*—*when foreman may procure physician to render first aid.* Where a servant was taken suddenly sick and a foreman was the highest officer of the master on the ground, such foreman had authority to employ a physician to render temporary services, by way of first aid, to the sick servant.

Appeal from the Circuit Court of Putnam county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1913. Reversed and remanded. Opinion filed August 2, 1913.

H. H. FIELD, C. S. JEFFERSON and BARNES & MAGOON, for appellant.

GEORGE W. HUNT and BUTTERS & ARMSTRONG, for appellee.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

MR. JUSTICE CARNES delivered the opinion of the court.

May 20, 1910, Neils Hanson was with another man, in the employ of appellant, under the supervision of a foreman named Bernhart, at Mark, Illinois. They were loading a railroad track scale and while so doing Hanson was taken suddenly sick. He was temporarily and hastily cared for by Bernhart and others by placing him in a box car near by.

Bernhart endeavored to get the Company's physician and failing, because of his absence, called at the office of appellee, Dr. John Aimone, and procured his assistance. Appellee made an examination of Hanson and on his advice he was taken to a hospital in Spring Valley, where appellee and three other doctors operated on him, discovering that he was suffering from a rupture of the walls of the stomach, which was occasioned by an abscess that had weakened the tissue so that the strain from lifting produced the rupture. The perforation was closed, the abdominal cavity cleaned out and sewed up, drainage put in and recovery of the patient followed. This action of *assumpsit* was brought by appellee to recover for medical and surgical services so rendered. He received a verdict and judgment for one hundred and fifty dollars from which this appeal is prosecuted by the Railway Company.

There is no claim of carelessness or negligence of appellant. The labor in which Hanson was engaged was not especially hazardous; while the strain from lifting probably caused the rupture of the weakened wall of the stomach it was not a strain that would have affected a normal man. There is no claim that appellant employed appellee to perform the service in question, or authorized anything in the matter, except in so far as it may be held liable for the acts of its foreman Bernhart. The record shows him to have been fore-

man of what is termed a "gang" consisting of two men. There is nothing to indicate any authority or apparent authority on his part to bind appellant by any contract or agreement out of the line of his employment as a foreman in charge of a few laborers in the yards of appellant. There is conflict in the evidence whether he did or did not attempt to authorize or direct or acquiesce in appellee's direction that Hanson should be removed to Spring Valley to the hospital. But no officer or employe of appellant gave any direction or assumed any responsibility as to the operation, and no employe of appellant, other than Bernhart, had any knowledge of what was to be done, or what was done at the hospital, until after the operation was performed.

There is no evidence in the case showing, or tending to show, what the services of appellee rendered while Hanson was in the box car, were worth, and no evidence from which the value of appellee's services in the whole matter can be determined; he introduced testimony as to the value of the services of the four doctors, and appellant was denied, on cross-examination of appellee as a witness, answers to questions asked for the purpose of ascertaining the value of the individual services performed by appellee and the other physicians engaged. It is apparent, however, that it was a difficult surgical operation and that appellee, who was a young man, admitted to practice in June, 1907, acted only as an assistant to one of the other doctors, who was probably an experienced surgeon and entitled to the major part of a reasonable fee for the operation.

The principal inquiry is whether there is any contract between appellee and appellant either expressed or implied. None is claimed except in so far as appellant can be held bound by the acts of its employe Bernhart. Appellee insists on the authority of *Toledo, W.*

& W. Ry. Co. v. Rodrigues, 47 Ill. 188; Indianapolis
& St. L. R. Co. v. Morris, 67 Ill. 295; Chicago Consol.
Traction Co. v. Mathews, 117 Ill. App. 174, and Chicago
& A. R. Co. v. Davis, 94 Ill. App. 54, that the request
of Bernhart, the foreman in charge at the time of the
occurence, was sufficient to bind appellant. But in all
those cases the liability of the defendant was based not
on the contract of some inferior servant but on the
ratification of the contract by some competent officer.
It was said in the Rodrigues case, supra, that while it
was a duty that would furnish a consideration for a
promise to pay for medical attendance, etc., to take
care of an employe rendered helpless in the employ-
ment of the master, "it is not such a duty resting on
the company, that any person, without authority from
the company, may render the service and compel pay-
ment. The request should be express and explicit, and
from a person who is empowered to act for the com-
pany." In that case the general superintendent was
presumed to have authority to ratify the contract of
a station agent and the decision was based on the act
of the general superintendent in ratifying the contract.
In the Morris case, supra, the Company was held liable
for the services in question, not because of the contract
of the conductor of the train, but because the officers of
the company were notified of the services rendered
and to be rendered at its expense, and it was held that
it was its duty to notify the person performing the
service if it did not intend to be held responsible,
which it did not do. In the Mathews case, supra, it was
only held that the company was liable because when
the plaintiff stated the case to the superintendent and
asked as to a continuation of his services the superin-
tendent made no direct reply, and therefore the trial
court was justified in finding that the employment of
the plaintiff by a conductor was ratified and confirmed
by the company. It was said in that case that the

court was "inclined to the view that when one is thus hurt, and the condition of the injured party requires prompt medical attendance, and no surgeon of the company is obtainable, the representative of the company in authority at the time and place of the accident has a right to employ a physician, and thus, for the time being at least to bind the company to pay for his reasonable services." But the court makes it clear that it does not base its decision on that ground. In *Cairo & St. L. R. Co. v. Mahoney,* 82 Ill. 73, there was a recovery for services rendered at the request of a station agent, but the decision was based expressly on the ground that the employment by the station agent was ratified by the conduct of the general superintendent. And in *St. Louis & K. C. R. Co. v. Olive,* 40 Ill. App. 82, the right of recovery from the company on the contract of the conductor was expressly denied, because there was no evidence to show a ratification of such contract. In *Chicago & A. R. Co. v. Davis,* 94 Ill. App. 54, it was held that where an accident happened to an employe and local surgeons of the company are not available, and the condition of the injured man requires prompt medical attention, that the representative of the company in authority at the time and place of the injury has the right to employ medical assistance, and thereby render the company liable for services. So far as we can learn, the doctrine of authority of an inferior officer in emergency cases, i. e., one in authority at the time and place of the accident, to bind his principal by contract for medical services rendered the injured in the absence of the Company's physician rests on the dicta of the court in *Chicago Consol. Traction Co. v. Mathews, supra,* and the decision of the court in *Chicago & A. R. Co. v. Davis, supra.* In the latter case the decision is based on the authority of *Toledo, W. & W. Ry. Co. v. Rodrigues, supra,* and *Indianapolis*

& St. L. R. Co. v. Morris, supra, and while the reasoning of those cases may tend to the support of such a rule, neither of them is express authority for it.

The rule is discussed and authorities reviewed in Salter v. Nebraska Tel. Co. 79 Neb. 373, 13 L. R. A. (N. S.) 545; and the conclusion is reached that under certain conditions such authority may be presumed without proof, and it is said: "This rule is one required by an emergency rather than one based on any general legal principle and that the authority of the officer with limited powers can extend no further than the emergency demands;" and that the "emergency services, unless expressly limited at the time of procuring them, ought to extend to a sufficient time for the party employed to communicate with the company, and, if it declines to be further responsible for notice to the proper poor authorities, if the injured party is entitled to public care." The authorities are to some extent reviewed in Bonnette v. St. Louis, I. M. & S. Ry. Co., 87 Ark. 197, and the authority of a conductor in charge of a train to employ a surgeon to attend a stranger injured in the running of the train was sustained on the ground that the emergency created the authority, the conductor being the highest agent of the company on the ground.

It is said in Story on Agency, sec. 85: "New and unexpected emergencies and necessities of such a critical nature may arise as, if one may use the expression, will expand the authority (of an agent) beyond its ordinary limits, and justify even a deviation from its ordinary limitation and import."

And again section 141: "Extraordinary emergencies may arise in which a person who is an agent may, from the very necessity of the case, be justified in assuming extraordinary powers; and that his act fairly done under such circumstances will be binding upon its principal."

Appellant favors us with no citation of authorities on this question of authority implied from the arising of an emergency, counsel say the question is too plain to require argument. It seems to us, from such examination of the reported cases as we have been able to make, that the law is not well settled either in this State or by any uniform holding of the courts of other States. It seems clear, however, that the foreman Bernhart had no authority to bind appellant to pay for the services performed at the hospital. The surgeons presumably had time before operating on Hanson to communicate with officers of appellant having apparent authority to act in the premises, and failing to do so they cannot recover of appellant for such services. But if it be a fact that Bernhart was the highest officer of the company on the ground, which it seems to us appellee should have affirmatively proved, we hold that he had authority to employ appellee to perform such temporary service, by way of first aid, as the occasion required, and therefore appellee may on proper evidence recover in this action the value of the services rendered in treating Hanson in appellant's yards and for such other and further service as the evidence may show was necessarily performed before he had time to communicate with authorized agents of appellant; but he had no authority to employ other physicians and make the Company liable either to them or himself for their services.

Appellee offered in evidence his certificate of license from the State Board of Health issued under our act on ''Medicine and Surgery.'' It was in a frame and showed no indorsement of recording as required by section 4 of that act (J. & A. ¶ 7385). It is claimed by appellant that he was not entitled to recover because of the omission of that proof, and answered by appellee that the proof was waived by permitting the certificate

to go in evidence without objection. We do not think the answer sufficient; the certificate is one thing and the recording another, admitting the first does not prove the last. But it is said by appellee that the defect could have been remedied by proof had objection been made. No authorities are cited by counsel on either side on the effect of omitting to record the license; the question may not arise on another trial and we will not further consider it.

For the reasons expressed, the case is reversed and remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*