L. B. CARSON, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

**PRINCIPAL AND AGENT:** Powers of Agent—Railroads—Employ-
1 ment of Physicians—Ratification. Authority in a railway employee to take injured employees to physicians who were not regularly employed by the company may be inferred from evidence that the company repeatedly paid such physicians for their services.

**PRINCIPAL AND AGENT:** Powers of Agent—Railroads—Employ-
2 ment of Physicians. Authority in subordinate agents, etc., of a railway company to engage the services of physicians to care for employees of the company who are injured *while in the line of their duty* to the company, does not embrace authority to employ a physician to care for employees who are injured while "off duty," and consequently *not in the line of any duty* to the company.

> PRESTON, J., dissents on the question of fact raised by the record.

**PRINCIPAL AND AGENT:** Powers of Agent—Emergencies. Prin-
3 ciple recognized that the implied authority of a servant, in cases of great emergency, to employ assistance at the expense of the master, arises only *when some interest of the master is to be conserved.*

**PRINCIPAL AND AGENT:** Powers of Agent—Authority—''Hold-
4 ing Out''—Ratification. He who bases his claim to recovery on an employment by an agent of the defendant, must show actual authority in the agent to employ, or, failing in this, (1) that the agent was held out by defendant as having such authority, or (2) that the defendant ratified the act of the agent.

*Appeal from Jackson District Court.*—WM. THEOPHILUS,

Judge.

SATURDAY, OCTOBER 18, 1917.

ACTION to recover for services rendered by plaintiff as a surgeon, in treating an employee of defendant's named Watson, and for services of Dr. Armstrong in assisting, and for hospital charges, the latter claims having been assigned to plaintiff. Trial was had to a jury, and on verdict for plaintiff, judgment was entered. The defendant appeals.— *Reversed.*

*Hughes & Sutherland* and *F. W. Myatt,* for appellant.

*F. D. Kelsey* and *A. W. Sokol,* for appellee.

LADD, J.—One Watson, a colored man.

1. PRINCIPAL AND AGENT: powers of agent: railroads: employment of physicians: ratification.

had been employed by the defendant on grading or cement work in the vicinity of Brown. The 20th of September, 1913, was rainy, and he and other colored men, having laid off for the day, had gathered at a house in the village. At about 5 o'clock in the afternoon, some of them informed Simpson, assistant foreman of defendant, that a man had been cut. Upon entering the house, Simpson found Watson bleeding and his intestines protruding. With the aid of others, he loaded him on a passing train to be taken to Preston. At the instance of the company's station agent there, Dr. Armstrong was at the station when the train came in, and directed the wounded man to be taken to his office. Either the foreman, Jones, or his assistant, Simpson, called Haskell, the assistant engineer in charge of the work being done by defendant, and Dr. Armstrong talked with him. Armstrong then replaced the intestines as best he could, and took the patient on the 7:15 o'clock train to the Maquoketa hospital, where, in the same evening, with his as-

sistance, the plaintiff performed a successful operation. The patient remained at the hospital two weeks, and in this action the plaintiff seeks to recover compensation for the services rendered by him as surgeon, as well as for those rendered by Armstrong, and for the hospital charges. Included also are hospital charges for the care of one Zania. The rendition of the services in the treatment of Watson, as alleged, and that he and Zania were cared for at the hospital, and assignments of the claims to plaintiff, are not questioned. That neither Jones nor Simpson was authorized to engage the services of a physician is conceded.

Was the evidence sufficient to carry to the jury the issue as to whether Haskell was authorized to engage the services of Armstrong to treat Watson, empower Armstrong to engage plaintiff's service, and to incur expenses for the care of these patients? Haskell was shown to have been in charge of the improvements being made along defendant's line of railroad between Green Island and Oxford Junction. Wood, the district engineer, acting for defendant, had employed him, and Wood testified that the extent of Haskell's authority was to see that the grade work being performed by contractors was properly done, and that he was in direct charge of the concrete construction of bridges and culverts, with authority to employ and discharge the men engaged in such construction. The witness testified further that:

"As regards his authority as assistant engineer, with reference to the employment of physicians he had no authority aside from a list of physicians. He was given a list of the company's physicians along the line, and he was to call on them if any of the men were injured or sick while working on the company's work. He was expected to call the company's physician when an employe was injured while engaged in the work of the company, and that was the extent of Mr. Haskell's authority.  *  *  *  I would say the

order was to go to the nearest physician in emergency cases.
*  *  *  In case Mr. Haskell couldn't find, at the place he
desired, a regularly retained physician of the railway com-
pany, what would he do in such an emergency? A.  I
suppose just like anyone else would.  I say he only had au-
thority to go to the railroad company's physician.  He hadn't
authority to go to anyone else.  By the Court:  Q.  I take
it that there were a number of emergency cases where par
ties had been personally injured, under your supervision,
and required immediate attention from some doctor.  Now
what is the usual custom of the road in cases where the in-
jured party requires immediate attention, and a railroad
doctor is not within reach?  Do you allow them to die, or
do you send them to some doctor that can be reached?  A.
All such cases are handled by the superintendent.  The
usual custom was to get them to a doctor as quick as pos-
sible.  Q.  And if the doctor of the company cannot be
reached you will find some doctor; isn't that the case?  A.
Certainly; yes, sir."

The witness then explained that the authority to em-
ploy physicians was limited to employees who became sick
or were injured while in the line of duty or service of the
company.  Neither plaintiff nor Armstrong had been em-
ployed as company's physician, but the evidence tended to
show that employees injured while at work were taken to
physicians other than the company's when the latter were
absent, and that the defendant uniformly paid for the serv-
ices by them rendered.  The company's regularly employed
surgeon was absent when Armstrong was engaged, and,
without reviewing the evidence, we are of opinion that it
was sufficient to have warranted the jury in finding that
Haskell had authority to engage Armstrong's services, had
Watson been injured while in the line of employment.
Surely, ratification of his action in repeatedly taking em-

ployees to physicians other than those regularly employed by the company, by compensating them for services so rendered, was evidence that he had authority so to do.

2. PRINCIPAL AND AGENT: powers of agents: railroads: employment of physicians.

In no instance other than that involved in this action, however, does it appear that he ever directed an employee, injured when not engaged in the company's work, to be taken to a physician, whether regularly employed by the company or not, or that the company ever paid for medical or surgical services or care at a hospital in such a case. Though physicians were shown to have aided in the care of those injured in a wreck at Riggs, and Haskell was in charge as representative of the company, there was no showing that he had had anything to do with their employment. That Armstrong was employed by Haskell, we have no doubt. When Watson was brought into his office, either Jones or Simpson called Haskell by telephone, and Armstrong talked with him. The latter testified:

"He called up Haskell at Delmar Junction, who asked him for me. I talked direct to Haskell, and I told him how bad the man was hurt. He asked me if I couldn't get him to the Clinton hospital, and I informed him that the train had gone, and that the roads were so muddy it was impossible to take him in an automobile. He asked me the nearest place we could take him, and I told him the only place we could get him would be Maquoketa. He ordered me to take him to Maquoketa and give him the very best attention, and he says, 'If you can't go along with him, why go as far as Delmar, and I will send the doctor from there with him to Maquoketa.' That was all that was said at that time, and in order to make myself safe, then, in about twenty minutes I called him up again, and he repeated the same story. So then I proceeded to bring him to the hospital."

We need not stop to ascertain whether this conversation conferred authority on Armstrong to employ plaintiff to

perform the operation; but see *Smith v. Chicago & N. W. R. Co.,* 104 Iowa 147; *Bushnell v. Chicago & N. W. R. Co.,* 69 Iowa 620; *Terre Haute & I. R. Co. v. Brown,* (Ind.) 8 N. E. 228; *Louisville, N. A. & C. R. Co. v. Smith,* (Ind.) 22 N. E. 775; *Burke v. Chicago & W. M. R. Co.,* 114 Mich. 685 (72 N. W. 997). It is evident from the facts recited that Haskell was without actual authority to employ Armstrong in behalf of the defendant or to authorize him to engage the services of plaintiff or procure the care of the patient at the hospital. None such had been expressly conferred on him, nor, as we think, impliedly by virtue of his position.

The board of directors of a railroad company, strictly speaking, is its agent and representative, but, in a practical sense, such board in its relations to the public is the corporation itself. Unless conferred by the articles of incorporation, all authority to act for the corporation must emanate from the board of directors, and before it can be bound by contracts of agents, officers or employees, it must be made to appear that power to enter therein has been conferred on such agent, officers or employees by said articles, or given by the board of directors or governing body, either expressly, impliedly or by ratification. Having designated agents, however, the corporation will be bound by whatever they may do or omit to do within the scope of their employment. Many courts have held that the extent of the agent's authority is often to be implied from the title of his position; for that such title, as general manager, general superintendent, or general agent, indicates large discretionary powers or authority as to the manner of carrying on the business of the company or the department thereof. See *Louisville, E. & St. L. R. Co. v. McVay,* 98 Ind. 391 (49 Am. Rep. 770); *Atlantic & Pac. R. C. v. Reisner,* 18 Kan. 458; *Toledo, W. & W. R. Co. v. Rodrigues,* 47 Ill. 188 (95 Am. Dec. 484); *Bedford Belt R. Co. v. McDonald,* 17 Ind. App. 492 (60 Am. St. 172). See, also, *Cushman v. Cloverland*

*Coal & Mining Co.,* 170 Ind. 402 (127 Am. St. 391) ; *Atlantic Refining Co. v. Leffingwell,* (Fla.) 34 L. R. A. (N. S.) 351; *Marquette & O. R. Co. v. Taft,* 28 Mich. 289; *Stephenson v. New York & Harlem R. Co.,* 2 Duer (N. Y.) 341; *Chaplin v. Freeland,* (Ind.) 34 N. E. 1007; *Holmes v. McAllister,* (Mich.) 48 L. R. A. 396.

But there is nothing in the designation "assistant engineer" warranting the inference of large discretionary powers in representing the company. Indeed, the name suggests limited, rather than general, powers. The circumstance of being "assistant" imports subordination to another, and puts all on inquiry as to the scope of his activity in helping another or others. The duties of an assistant ordinarily are circumscribed. Authority to employ a physician is not to be inferred from the mere fact that an employee is roadmaster (*City of Lafayette v. James,* 92 Ind. 240 [47 Am. Rep. 140]), or is a conductor (*Tucker v. St. Louis, K. C. & N. R. Co.,* 54 Mo. 177), or is a foreman (*Rankin v. New England and Nevada Silver Mining Co.,* 4 Nev. 78), or is a yardmaster (*Marquette & O. R. Co. v. Taft,* 28 Mich. 289), or is a station master (*Cox v. Midland R. Co.,* 3 Welsby, H. & G. [Ex. R.] 268), or is a general surgeon (*Smith v. Chicago & N. W. R. Co.,* 104 Iowa 147). One court has held that this is true also of a division superintendent (*Brown v. Missouri, K. & T. R. Co.,* 67 Mo. 122), but as to this there is some conflict in the authorities. See *Union P. R. Co. v. Winterbotham,* 52 Kan. 433 (34 Pac. 1052). See note to *The Kenilworth,* 4 L. R. A. (N. S.) 58, in which the authorities are collected; 1 Elliott on Railroads, Section 222.

We have no difficulty in reaching the conclusion that Haskell was without authority to employ a physician to treat or operate on an employee injured while not engaged in the line of his duty or service and within the scope of his employment. Nor does it appear from this record that he had ever done so previously, or that defendant had ever au-

thorized him or anyone else to do so, or that the company had ever approved or paid for the service of a surgeon so rendered.   Nor is there any showing that defendant ever held Haskell out as having such authority, or did anything to mislead anyone into so believing.   Haskell, then, was without actual or ostensible authority to bind defendant in engaging the services of Armstrong.   Not only was Watson not engaged in the work of the defendant, but he was off its premises at considerable distance, and in a house with companions, passing the time according to his own notions. The company was under neither legal nor moral obligation to care for him or to see to the healing of his wounds. Though the wound may have been such as to require immediate attention, the injury was not suffered while engaged in the service or in the performance of a duty for defendant, and therefore the authority of another employee to render assistance by securing medical attention cannot be implied. See cases collected in note above referred to in 4 L. R. A. (N. S.) 63.   For all that appears, the company exercised no control over its employees, save when engaged in its work and in the performance of their duties in its behalf. At other times they are presumed to have been free to do as they chose.   If it can be said, then, that the wound was such as involved an emergency and required immediate attention, the situation was not such as that authority of defendant's subordinate officers or employees, such as foreman or assistant engineer, to employ medical aid, would be implied.   This happens only when the employee is injured in the actual service or in the performance of some duty for the master. See *Terre Haute & I. R. Co. v. Brown,* supra; *Bedford Belt R. Co. v. McDonald,* 12 Ind. App. 620 (40 N. E. 821); cases collected in note above referred to; 4 L. R. A. (N. S.) 63; *Ohio & Mississippi R. Co. v. Early,* (Ind.) 28 L. R. A. 546;

3. PRINCIPAL AND AGENT: powers of agent: emergencies.

*Arkansas Southern R Co. v. Loughridge*, 65 Ark. 300 (45 S. W. 907). No duty to provide for medical aid could have been implied save from the circumstance that the emergent injury occurred in effectuating the purposes of the party held liable, and we have found no case to the contrary.

4. PRINCIPAL AND AGENT: powers of agent: authority: "holding out:" ratification.

But it is argued that plaintiff and Armstrong were not required to ascertain at their peril whether the employee was injured while actually engaged in the line of his employment. It is elementary that those dealing with agents are bound to know the extent of the agent's authority. If they do not know, they must ascertain at their peril. On the other hand, the principal is not charged with knowledge of anything the agent may do in excess of his authority, and is not bound thereby, save upon ratification, unless the party dealing with the agent has been misled to his injury by the principal's having clothed the agent with apparent or ostensible authority to do the things he has done in excess of authority. As heretofore pointed out, there was no evidence of ratification by defendant, or that it had clothed Haskell with the appearance of having authority to enter into contracts such as he did with Armstrong. It follows that defendant was not bound by the arrangement made with Armstrong by its assistant engineer, nor by that by Armstrong with plaintiff and the hospital. It is doubtful whether the claim for the care of Zania was allowed by the trial court, but whether so or not, there was no showing that Haskell, or anyone authorized so to do in defendant's behalf, engaged the services of the hospital, save that he was cared for.

The motion for new trial should have been sustained on the ground that the evidence was insufficient to sustain the verdict.—*Reversed.*

GAYNOR, C. J., WEAVER, EVANS, SALINGER AND STEVENS, JJ., concur.

PRESTON, J. (dissenting).—I agree that the evidence is not sufficient to justify the finding of the jury as to the Zania item of $25. The substance of the evidence is that the doctor had, prior to the services he performed for Zania, done work for injured employees of the company sent him by Haskell; and the argument is that he had a right to presume, from this usual course, that he was performing this service for the company. But this assumes ·that the patient Zania was sent by Mr. Haskell, but I think the evidence is not sufficient to show that fact. The doctor testifies, over objection, that he had a book account of the charge for the Zania treatment, and that he had charged it to the defendant. But this charge of itself would amount to nothing unless the company, or someone authorized, or ostensibly authorized, employed the doctor.

I dissent, however, from the holding of the majority as to the patient Watson. I think there is other evidence in the record that has a bearing, but I shall not take the time to set it out. It seems to me that the evidence was sufficient to take the case to the jury, as to the Watson items, on the question as to whether Haskell had been clothed by the defendant with apparent or ostensible authority, and to show that plaintiff, in good faith, relied thereon, and was misled.

I would affirm on condition that appellee file a remittitur for the Zania charge.