### A. V. Wills & Sons *v.* Irby.

### Opinion delivered April 2, 1923.

1.  PRINCIPAL AND AGENT—IMPLIED AUTHORITY TO BIND MASTER FOR FUNERAL EXPENSES.—The rule that, in an emergency of extreme urgency and the remote absence of the principal, the servant in charge at a place where a servant is injured is authorized to act for the principal has no application to the case where a servant is accidentally killed and a foreman without actual authority employs an undertaker to care for his body, and the master is not liable unless he ratifies such employment.

2.  PRINCIPAL AND AGENT—RATIFICATION OF UNAUTHORIZED ACT—EVIDENCE.—Evidence *held* insufficient to show ratification by principal of unauthorized. act of agent.

Appeal from Clay Circuit Court, Eastern District; *W. W. Bandy,* Judge; reversed.

*W. E. Spence* and *Block & Kirsch,* for appellants.

The court should have directed a verdict for appellants. There is no substantial evidence to support the verdict, and the case should be reversed and dismissed.

*L. Hunter, Carl L. Hunter, Z. B. Harrison,* for appellee.

Appellants concede there was sufficient evidence to go to the jury on the question that one agent or employee of appellants purchased the items included in the account sued on, and also that payment was demanded of appellants. We insist that the evidence is

sufficient that appellants, with full knowledge of the facts, failed within a reasonable time to disavow the acts of their agent, and ratified same by silence of acquiescence, to support the verdict of the jury, which should not be disturbed.

McCULLOCH, C. J. Appellants, with their principal office at St. Louis, are contractors, doing dredging work, and during the month of January, 1921, were doing that kind of work, using a dredgeboat, in Clay County, Arkansas. Durran was the foreman of the boat, and Earl Brogley, an employee, fell from the boat into the drainage canal, and was drowned. It does not appear that appellants or any of their servants were responsible to any extent for the death of Brogley. This occurred at night, and Durran sent a messenger to Rector for the purpose, as claimed by appellee, of procuring the services of an undertaker to take charge of the body of the decedent and prepare it for burial. There is a conflict in the testimony as to the purpose for which the messenger was sent, whether or not Durran undertook to contract with appellee, in appellant's name, for the services performed and the things furnished, but, as the sufficiency of the evidence is challenged, the case is stated in its light most favorable to appellee.

Appellee is an undertaker at Rector, and he was requested by Durran's messenger to go out and take charge of the body. He did so at night, and carried the body to Rector, to his undertaking establishment, and the next morning a coffin and other burial paraphernalia were selected.

The evidence is sufficient to warrant the finding that Durran, purporting to act for appellants, his principal, authorized appellee to prepare the body for burial and to furnish the funeral outfit.

Appellee prepared the body by embalming it, and furnished an expensive casket and vault, and also wearing apparel for the corpse. The total bill was $395.

Early in the morning, before the selection of the casket and other things, Durran got into telephonic communication with Ray Brogley, who was a brother of the deceased, and who was appellant's foreman on another dredgeboat. Ray Brogley came in the afternoon and was present at the selection of the coffin and other things, but appellee testified that he furnished the things and did the work on the strength of the directions given him by Durran as appellant's agent.

The body was shipped to Amboy, Illinois, the former home of the deceased, and was accompanied on the trip by Ray, the brother of deceased. On that day appellee made out two invoices for services and burial supplies furnished, each being made out in the name of Ray Brogley. He handed one of the bills to Durran and the other to Ray Brogley for the purpose of having them deliver the same to Bunnell, appellant's general superintendent, who exercises general authority. As Ray Brogley went through St. Louis with the corpse, he was met at the station by one of the members of appellant's firm, and this bill was handed to that person, but no response was made, so far as the evidence shows, concerning the payment of the bill. This was on January 26, 1921. On February 9 appellee, not having heard anything from appellants or Bunnell, their superintendent, addressed a letter to appellants at their office in St. Louis, inquiring about what disposition had been made of the bill. The letter was not brought into the record, but the substance of it is fairly shown. To this letter appellants replied on February 12, 1921, as follows:

"We have your letter of February 9th in reference to bill for preparing the body of Earl Brogley for shipment to Amboy, Illinois. We wish to say that we have not received any such bill, but presume that it is in the possession of his brother, Ray Brogley."

There is no testimony that appellants made any agreement to pay the bill. Later correspondence took

place between the parties, and appellants expressly refused to pay the bill.

There is no testimony that Durran had any express authority from appellants to contract in appellants' name for services or supplies of this kind. On the contrary, the testimony is uncontradicted that Durran's express authority was limited to the operation of the dredgeboat and the purchasing of necessary supplies in the absence of Bunnell, the superintendent.

Appellee instituted this action against appellants to recover the amount of the bill, and counsel rely entirely upon either implied authority on the part of Durran to act for his principal in an emergency, or upon a ratification by appellants in failing to repudiate, within a reasonable time, the exercise by Durran of such authority.

There being no express authority for Durran to make such a contract, the implication of such authority, if it existed at all, must rest upon the necessity for action in an emergency where the principal, or one with express authority, was absent.

We have illustrative cases where servants of railroad companies have acted by the employment of surgeons in an emergency to attend injured passengers, employees or strangers, where the injury was inflicted by the train, and it has been held that, on account of there being an extreme emergency and the remote absence of the principal, the servant in charge at that particular place where the injury occurs is authorized to act for the principal. *St. L. A. & T. Ry. Co.* v. *Hoover,* 53 Ark. 377; *Ark. Southern R. Co.* v. *Loughridge,* 65 Ark. 300; *Bonnette* v. *St. L. I. M. & So. Ry. Co.,* 87 Ark. 197.

In the case first cited, Judge HEMINGWAY, speaking for the court, stated the doctrine as follows:

"It has been held that where such injury is done at a point distant from the chief offices of the company, and there is urgent necessity for the employment of a surgeon to render professional services to an injured employee, the conductor, if he is the highest agent of the

company on the ground, has authority to bind the corporation by the employment of a surgeon to render the services required by the emergency. *Terre Haute & Indianapolis Ry. Co.* v. *McMurray,* 98 Ind. 358. The authority existing in such cases is exceptional; it grows out of the present emergency and the absence—and consequent inability to act—of the railway's managing agent; its existence cannot extend beyond the cause from which it sprang. The exception states the law most favorably for the appellee, and we do not hold that it does not state it too favorably; but, conceding it to be correct, his cause must fail. Neither of the subordinate agents engaged the appellee to attend the injured party during the emergency, if there was one."

In that case the injured person was an employee of the company. In the Loughridge case, *supra,* the injury was to a passenger, and the same doctrine was announced and liability was imposed on account of the implied authority of the conductor to employ a surgeon. In the Bonnette case, *supra,* the injury was to a stranger, who was injured by the train, and the doctrine was again repeated and liability imposed. It will be observed that the reasoning clearly implies that there must be not only an emergency, but one of extreme urgency. In the Loughridge case the court held that board furnished to the surgeon employed by the conductor should not be paid, and this illustrates the limitation upon the doctrine. There are many authorities on this subject, but we have not been able to find any case where liability was imposed for anything except medical or surgical treatment in such an emergency. It has never been applied to attention to the dead, and it ought not to be so applied, for the reason that the preparation and burial of the dead is not an emergency of such immediate and pressing urgency as calls for quick action like the case of the alleviation of suffering of an injured person, or to prevent death from ensuing. In case of injury to a person it may be a question of hours, or even moments, and the emer-

gency does not justify any delay whatever, but the death of a person creates no such emergency, however great the necessity eventually of burying the dead. It is a matter, in other words, which will wait a few hours, or even longer, giving time to communicate with those upon whom the burden of the occasion should rest.

The doctrine being one wholly of necessity and involving the imposition of a legal burden where, under other circumstances, there could be nothing more than possibly a moral obligation, it should not be extended beyond the circumstances which first gave it rise.

We are of the opinion therefore that there was no implied authority on the part of Durran to contract in the name of his principal for the burial of the dead man. It is not claimed that there was any express authority, nor do we think that the circumstances justified a submission to the jury of the question of ratification of the act of Durran. There was nothing except mere silence, a failure on the part of appellants to repudiate the act of Durran, and it is not even shown that they were advised that Durran had contracted in their name. There is nothing except the bare fact that a bill was handed to them, made out to Ray Brogley, the brother of the deceased. This did not put appellants upon notice that they were charged with liability, and it called for no reply. As soon as they received the letter from appellee on this subject, they promptly replied, merely stating that they had not received any bill, and the contents of the letter itself were sufficient to put appellee upon notice that appellants were not impliedly ratifying the act of Durran. In other words, there is nothing to put them on notice that they were expected to pay the bill and to call for a repudiation or denial of liability.

We are therefore of the opinion that under no view of the facts of the case was there any ratification by appellants, and there was no liability established.

It is unnecessary to discuss the instructions in the case, since we have reached the conclusion that, upon the facts fully developed, there is no liability.

The judgment is therefore reversed, and the cause is dismissed.

WOOD and HUMPHREYS, JJ., dissent.